## STATE ex rel. BRUCE vs. DAVIDSON.

TOWN MEETING: (1) *Generally a deliberative body.* (2) *Parliamentary law to govern.* (3–6) *Propositions, how submitted and acted upon.* (7) *Place of holding.* (8, 9) *Change in place of holding.*

1.  Except in the election of such officers as the statute requires to be elected by ballot, the functions of a *town meeting* are, in general, those of a *deliberative* body.
2.  Where the proceedings are not regulated by the statute, the general rules of parliamentary law, so far as applicable, should be observed and enforced in conducting the business of a town meeting.
3.  Propositions upon which such meeting may lawfully act may be submitted to it by motion or resolution, or in the form of proposed by-laws or orders, by any elector of the town; and the chairman cannot prevent action thereon by neglecting or refusing to present the same to the meeting.
4.  Such propositions are open for discussion and amendment, and may be adopted or rejected in whole or in part; and the action of the meeting thereon may be reconsidered on motion for that purpose, made within one hour after the vote is taken.
5.  Unless otherwise ordered by the meeting, the vote upon any such proposition should be taken *viva voce*, or by a division.
6.  Probably the meeting can order the vote in such a case to be taken by ballot, after a reasonable opportunity given the electors to amend and perfect the proposition; but the proposition should be voted upon separately, and the result of the ballot ascertained and determined in time to enable any elector to move a reconsideration.
7.  The annual town meeting in each town is required by law to be held at the place where the last one was held, unless the holding thereof at some other specified place has been " ordered at a previous meeting " (Tay. Stats., 354, § 30); and the rules above stated apply to the making of such an order.
8.  The mere fact, therefore, that a large majority of the ballots (for town officers) which were cast at a town meeting, contained written or printed words indicating the will of the voters that the next town meeting should be held at a certain place named, did not authorize the holding of the next meeting at the place thus designated, but the vote was wholly void; the proposition not having been submitted to the meeting as a deliberate body, nor any vote thereon by ballot ordered.

State ex rel. Bruce vs. Davidson.

9. A part of the electors of the town having met at the place thus designated, at the time of the next annual meeting, and elected the defendant town treasurer; and another part having met at the place of the previous meeting, and elected the relator town treasurer: *Held,* that the relator was entitled to the office.

COLE, J., dissents.

APPEAL from the Circuit Court for *Fond du Lac* County.

On the first Tuesday in April, 1872, two town meetings were held in the town of Suamico, Brown county, one at the school house in district No. 1, and the other at Flintville in said town. At the former of these meetings the relator was elected town treasurer, and at the latter the defendant was elected to the same office. Each filed with the town clerk, in due time, the oath and bond required by law. This action was brought to determine which of the parties was legally elected to such office.

The facts, so far as it is necessary to state them, are as follows: The annual town meeting of the town of Suamico for the year 1871 was held at the school house in district No. 1, where all former town meetings had been held. At the meeting of 1871 no motion was made, and no proposition was formally submitted to the electors, to appoint a place for holding the next town meeting; but when the ballots for town officers were canvassed, it was found that upon one hundred and one of the ballots were printed or written the words, " next town meeting to be held at Flintville," and upon eleven ballots were the words, " against moving the polls." The poll list contains 179 names, and the highest number of votes cast for any town office was 178.

On the first Tuesday in April, 1872, a portion of the electors of the town assembled at the place of holding the town meeting for 1871, and elected town officers for the ensuing year; and another portion assembled at Flintville, and did the same thing. As before stated, the relator was elected town treasurer by the former, and the defendant by the latter meeting.

The circuit court found as facts in the case, that it was previously known and understood by the electors of the town generally, at least by a very large majority of them, that the place of holding the town meeting of 1872 was to be determined by ballot at the town meeting of 1871, although several voters, who were opposed to removal, did not know until after they had cast their ballots at the latter town meeting, that a vote was being taken by ballot on that question.

As conclusions of law the court found that the meeting held at Flintville was the legal town meeting of the town of Suamico for the year. 1872, and that the defendant was the lawful town treasurer of that town for the year ensuing; and rendered judgment for the defendant, dismissing the complaint on the merits, with costs.

From this judgment the relator appealed.

*Hastings & Greene*, for appellant:

1. The mode of voting on the question of removal was different from and inconsistent with that pointed out by law. Town meetings, under the statute, are of a two-fold character, electoral and deliberative. In its electoral capacity, the town meeting elects town officers. As a deliberative body, its authority is both legislative and administrative. It *enacts* by-laws and regulations, and *administers* the prudential affairs of the town. The two functions are entirely distinct. The election of officers is by ballot, as pointed out by statute. Town laws and town business, however, are brought before the meeting for the first time by motion or resolution only. In the former case, the question to be voted upon is known in advance, and is deliberated upon before the election. In the latter, the question must be deliberated upon, if at all, at the meeting. In the election of officers the result is not known until the close of the meeting. In town legislation the question is propounded and the decision announced by the chairman during the meeting. The declaration of the result as to elections is final, and the meeting possesses no revisory authority. The declaration

State ex rel. Bruce vs. Davidson.

of the meeting in its deliberative capacity is not final, but the question may be reconsidered, and the former action reversed. In these respects a town meeting resembles the board of directors of a private corporation. A. & A. on Corp., 76. The election of officers is by ballot, the mode being pointed out by statute. R. S., ch. 15, secs. 27–43. Not a word is said as to these ballots containing anything but the names of officers. But the statute provides (R. S., ch. 15, sec. 25), that at the opening of every town meeting the chairman shall state the business to be transacted, and name the order in which it shall be entertained. If, as in this case, questions of town policy may be voted upon by ballots for officers, cast continuously from the opening to the closing of the polls, and without the opportunity for reconsideration provided by statute, then the statute becomes a dead letter. The motion for reconsideration is one of the most important safeguards for securing fair and intelligent action upon town matters. Such a departure from the form of voting prescribed by statute is manifestly fatal. Indeed, the authorities hold that the popular will, expressed in any other manner than that prescribed by law, must be disregarded. *Foster v. Scarff*, 15 Ohio St., 532, 534; *Commonwealth v. Read*, 2 Ashmead (Pa.), 261; Brightley's Digest Election Cases, 126, 448, 679; *Juker v. Commonwealth*, 20 Pa. St., 493; *State v. Hilmantel*, 21 Wis., 566–581; *State v. Stumpf*, 23 Wis., 630; *Chadwick v. Melvin*, Brightley's Digest Elec., 251; Cushing's Legislative Assemblies, 37–39, *note; People v. Adams*, 9 Wend., 333; Cooley's Con. Lim., 598, 613, 616; 15 Mich., 471; 11 id., 63; *Fort Dodge v. District Township*, 17 Iowa, 86; *Barry v. Lauck*, 5 Cold., 588; *Ellis v. Commissioners*, 2 Gray, 370. These authorthorities establish that any departure from the law, either as to time, place or manner of voting, is fatal. Especially is this so when such departure deprives legal voters of their votes. The franchise of suffrage is purely the creature of written law, statutory and constitutional. Statutes fixing the mode of its exercise are mandatory, and the franchise must be exercised in

the manner pointed out by the law creating it. Potter's Dwarris, 223; *Commonwealth v. Meeser*, 44 Pa. St., 343; *Chase v. Miller*, 41 id., 403. Nor is the fact material that a majority of the votes actually cast were in favor of removal. "Majorities as well as minorities are bound by law." *Juker v. Commonwealth*, 20 Pa. St., 493.

2. Even if the statute were silent as to the mode of voting on the removal, the mode here resorted to is not a lawful means, since it directly tends to disfranchise voters. Cooley's Const. Lim., 602; *Attorney General v. Supervisors*, 11 Mich., 63; *People v. Maynard*, 15 Mich., 471; *Capen v. Foster*, 12 Pick., 488.

3. The failure of the chairman to state that the question of removal would be entertained or acted upon, renders any action on that question nugatory. In the New England states, town meetings are convened by what is termed a *warrant*. The statutes of those states require this warrant to specify the business to be transacted by the meeting, just as our statute requires the chairman, at the opening, to state the business, etc. (Sec. 25, ch. 15, R. S.) And these requirements are based upon precisely the same reason. The statutes not fixing the business to be transacted, these provisions are designed to furnish the voters information as to just what business will be acted upon during the meeting. The decisions of the New England states, therefore, as to the necessity of this statement, and how specific it must be, are applicable to this requirement of our statute. By these decisions no business can be acted upon unless specified, and the specification of " any proper business," or " any lawful business," is not sufficient to authorize action on any matter. Dillon's Munic. Corp., § 206 and note 2; *People's etc. Co. v. Wescott*, 14 Gray, 440; *Rollins v. Chester*, 46 N. H., 411; *Hunt v. School Dist.*, 14 Vt., 300; *Sherwin v. Bugbee*, 16 Vt., 439; 17 Vt., 337, 444; *People v. Batchelor*, 22 N. Y., 128, 134, 146.

*Neville & Tracy*, for respondent, contended that the provision of the statute requiring the chairman of the town meeting to

state the business to be transacted and the order in which it shall be entertained, is, in effect, only a prohibition against voting a tax out of the regular order. Any other business may be done out of the order stated by the chairman, or even if he fails to state it at all. Statutes are generally held to be merely directory when they do not contain negative words. The sections of the statute (Tay. Stats., p. 214, §§ 19 and 20) providing for giving notice of election of county officers, contain the same imperative word "shall" as the statute under consideration. But this court has held in several instances that actual notice to the mass of voters supersedes the necessity of the formal notice required by statute. *State ex rel. Peacock v. Orvis*, 20 Wis., 235; *State ex rel. Lutfring v. Gœtze*, 22 Wis., 363. To the objection that a vote by ballot precludes the possibility of the reconsideration guarantied by statute (Tay. Stats., p. 357, § 47), counsel urged: (1.) No such right is guarantied by the statute. It is only provided that if a motion to reconsider be made after the expiration of one hour, it shall not prevail, unless sustained by a majority of all votes then on the poll list. (2.) The object of the statute is fully accomplished by a vote by ballot, since an expression of the wish of all voters present is thus had. (3.) If a motion to reconsider be made and sustained by the requisite number of votes, a reconsideration can be had after the announcement of the result of a vote by ballot.

The statute provides (Tay. Stats., p. 354, § 30), that annual town meetings shall be had at the place where the last town meeting was held, or at such other place therein as shall have been ordered at a previous meeting. We define an order as "any expression of the will of the voters present at any town meeting, announced to the meeting as such, and made a part of the records thereof." This will may be expressed in any form whatever, so that the expression is a clear and unambiguous one, so made that the intent of the voters can not be misunderstood.

LYON, J.    If the annual town meeting of the town of Suam-
ico for the year 1872 was lawfully held at Flintville, the de-
fendant, having been elected at such meeting, and having duly
qualified, is the town treasurer of that town, and the judgment
of the circuit court is right.    But if such annual town meeting
was lawfully held at the place where the preceding annual
meeting was held, the relator is the town treasurer, and not the
defendant, and the judgment of the circuit court is erroneous.
Whether the town meeting of 1872 was lawfully held at Flint-
ville depends upon the validity of the ballots cast at the pre-
ceding annual town meeting in favor of holding the next town
meeting at that place.

It is doubtless true that very many of the requirements of
law as to the manner of conducting elections are directory;
that many of the acts which are required by statute to be per-
formed by the officers charged with the duty of conducting
elections, are purely ministerial; and that a failure to comply
with such requirements does not necessarily invalidate the elec-
tion.    It seems that if the election is authorized by law, is held
at the prescribed time and place, and is conducted fairly and
in *substantial* compliance with the law, it is sufficient.    This
doctrine has been repeatedly asserted or recognized by this
court.    *State ex rel. Peacock v. Orvis*, 20 Wis., 235; *State ex rel.
Bancroft v. Stumpf*, 21 id., 579; *State ex rel. Doerflinger v. Hil-
mantel*, id., 566; *State ex rel. Lutfring v. Gœtze*, 22 id., 363;
*State ex rel. Chase v. McKinney*, 25 id., 416.

But where there has been a failure, in conducting an elec-
tion, to comply substantially with the requirements of the stat-
ute in respect to time, place, or manner of voting, such election
is void.    Thus, when the law prescribes that the voting shall
be by ballot, and the vote is taken *viva voce* or by count, the
irregularity is fatal, although the vote be nearly or quite unan-
imous.    If the conditions be reversed, and the vote be by bal-
lot when the law requires that it be taken in some other man-
ner, the result is the same.    *Commonwealth ex rel. Clark v. Read,*

2 Ashmead, 261; *Foster v. Scarff*, 15 Ohio St., 532. See also cases above cited.

It is not pretended or claimed in this case, that the town meeting of 1871, considered as a deliberative body or as an aggregation of the voters of the town there present, made any order or took any action whatever in relation to the place of holding the next meeting; and the controlling question to be determined is, whether any number of the electors, without any such action by the meeting, could change the place of holding the annual town meeting for the ensuing year, by expressing, on the ballots which they voted for town officers, their desire or will that the same should be held at Flintville.

With the exception of the election of those officers which the statute prescribes shall be elected by ballot, all, or nearly all, of the functions of a town meeting are such as pertain to a deliberative body or assembly. The subjects upon which a town meeting may take action are numerous and diversified. The course of procedure which is to be pursued is not fully marked out by the statute, and I deem it quite safe to say that when the statute does not give direction, the general rules of parliamentary law, so far as they may be applicable, should be observed and enforced in conducting the business of a town meeting. It will necessarily follow, that propositions upon which the town meeting may lawfully act may be submitted to it by motion or resolution, or in the form of proposed by-laws or orders, by any elector of the town, for the consideration of the meeting. It also follows from such application of the rules of parliamentary law, that the chairman of the meeting cannot prevent action upon any subject within the powers conferred by law upon the meeting, by neglecting or refusing to present the same to the meeting for its action. Clearly the statute (Tay. Stats., 357, § 47) ought not to be construed to give to the chairman any such absolute veto upon the action of the meeting. In the present case, however, the chairman did announce two orders of business, under either of

which a proposition to change the place of holding the next town meeting to Flintville could have been presented. These were as follows: "*Sixth*, to make by-laws *and orders* for the management of the prudential affairs of the town. *Seventh*, to act upon all other lawful business proposed to the meeting."

Any of the propositions before mentioned are open for discussion and amendment, and may be adopted or rejected by the meeting, or adopted in part and rejected in part; and the action of the meeting thereon may be reconsidered, if a motion to reconsider be made within one hour after the vote was taken (§ 47, *supra*). Unless otherwise ordered by the meeting, the vote upon any such proposition should be taken *viva voce*, or by a division. It is probable that the meeting has the power to direct the vote to be taken by ballot; but before it can properly do so, reasonable opportunity ought to be given the electors to amend and perfect the proposition; the same should be voted upon separately; and the result of the ballot must be ascertained and declared in time to give any elector an opportunity to move a reconsideration of the vote. In no other manner can the functions of the town meeting as a deliberative body be so exercised as to secure the rights of each elector to submit and discuss propositions, to propose amendments thereto, and to move a reconsideration of any vote thereon.

It is provided by statute, that " the annual town meetings in each town shall be held at the place where the last town meeting was held, or at such other place therein as shall have been ordered at a previous meeting." Tay. Stats., 354, § 30. There seems to be no room for doubt that this statute contemplates that a proposition to change the place of holding the annual town meeting must be made to the town meeting, composed of such of the electors of the town as are there assembled in an aggregate capacity as a deliberative body; that the proposition must be open to discussion and amendment (unless, by appropriate action, such as ordering the previous question, the meet-

ing direct otherwise); and that the right of any elector to move a reconsideration within the time prescribed by statute must not be impaired. The right to debate the proposition, and to propose amendments thereto, cannot be taken away by the action of any number of the electors acting individually and not in their aggregate capacity as a town meeting; and neither the electors nor the meeting can lawfully deprive an elector of the right to move a reconsideration. In this case the acts of the hundred and one electors who, at the town meeting of 1871, voted that the next town meeting should be held at Flintville, were merely individual acts. In no correct sense did those acts become the act of the aggregation of electors known as the town meeting.

If, instead of voting upon their ballots in favor of holding the next town meeting at Flintville, these hundred and one electors had, during the progress of the town meeting of 1871, signed and filed with the town clerk an order something like the following : "The undersigned, being a majority of the legal voters of the town of Suamico, and being lawfully assembled in annual town meeting on this first Tuesday in April, 1871, do hereby order that the next annual town meeting of said town be held at Flintville," probably no one will claim that such an order would have any force or effect whatever. It is well settled that the powers given to any legislative or other deliberative body must be exercised by the body itself, and cannot be exercised by the members thereof in their individual capacity, although all of the members join in the act.

It seems to me that there is no difference in principle between the mode of procedure above indicated and that which was resorted to. The supposed order, had it been made, would have been no more the individual act of the electors signing the same, than are the votes which were deposited in the ballot box the individual acts of the electors who gave those votes. Debate, amendment and reconsideration were as effect-

ually prevented by the mode adopted as they would have been had the other mode been resorted to.

These are matters of substance, and not mere irregularities; and, in the opinion of a majority of the court, the method adopted to obtain expression of the electors of Suamico on the question of holding the annual town meeting for 1872 in Flintville was so entirely without authority of law, that the court ought not and cannot hold that the vote in question was of any force or effect whatever.

It follows from the views above expressed, that the place of holding the annual town meeting of 1872 was not changed by the preceding annual town meeting, and hence, that the meeting at which the relator was elected town treasurer was the lawful annual town meeting of that town for 1872.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

COLE, J., dissents.