[No. 18750. Department Two. December 1, 1924.]

PAUL M. BEHRENS, *Appellant,* v. H. R. BECHTEL *et al.,*
*Respondents.*[1]

SCHOOLS AND SCHOOL DISTRICTS (22)—DISTRICT PROPERTY AND
CONTRACTS—LOCATION AND PURCHASE OF SITE—NOTICE OF MEETING.
Rem. Comp. Stat., § 5028, providing for special meetings of school
district electors to authorize, by a majority vote, the purchase of
additional school sites, contemplates a deliberative assembly duly
convened, and is not complied with by the calling of an election by
notice stating that the polls were open from 4 to 8 p. m., notwith-
standing 183 out of 200 electors appeared during the opening of
the polls, and individually cast ballots expressing their individual
wishes.

Appeal from a judgment of the superior court for
King county, Davidson, J., entered February 18, 1924,
upon findings in favor of the defendants, in an action
to enjoin the purchase of a school site, tried to the
court. Reversed.

*Caldwell & Evans,* for appellant.

*Roberts & Skeel* and *Tyre H. Hollander,* for respond-
ents.

HOLCOMB, J.—This is an injunction proceeding,
brought by appellant as a resident and taxpayer of
school district No. 171, a district of the third class, in
King county, Washington, against the directors of the
district, to enjoin them from proceeding to purchase a
two-acre tract of ground as an additional school site,
and to restrain the county auditor from issuing a war-
rant to the Standard Oil Company in payment for the
property.

The complaint presents two causes of action:

(1) That a majority of the board are proceeding
fraudulently pretending to buy the property as an ad-

[1]Reported in 230 Pac. 426.

ditional school site, whereas they actually intend to abandon the present school site and move the school to the new site. In other words, that in purchasing the property in question under the pretense of acquiring an additional school site, they are not acting in good faith, but that their real purpose is to remove the school without the sanction of a two-thirds vote of the electors of the district voting at an election called for that purpose, as required by statute.

(2) That even though the board is proceeding in good faith, nevertheless it is proceeding without authority from the electors.

It was admitted at the trial that it was the intention of the board of school directors to buy the property unless restrained, and that they had in fact drawn a voucher for that purpose and delivered it to the county auditor, asking for the issuance of a warrant to pay for the property. It was also admitted that the county auditor would, unless restrained, issue and deliver the warrant to the owner of the property. It was admitted that the school district has owned its present school site for upwards of twenty years, and that it was acquired as the result of a majority vote of the electors of the district; that a school building has been built thereon and for all of that period of time has been and now is being used by the district for school purposes.

The question of removing the school to another site has been previously submitted to the voters of the district and voted upon. On May 8, 1923, a special school district election was held in which the voters voted upon two propositions: (1) to remove the present school to another site; and (2) to purchase additional property adjoining the existing school site for the purpose of enlarging the same. The election board, upon canvassing the ballots, found that both propositions had carried. A suit to test the validity of the

canvass ensued in the superior court of King county, in which that court set aside the results on the removal proposition, and upon a recount determined that the same had not received a sufficient number of votes to remove the school. On July 31, 1923, a meeting of the school board was held at which it was decided to refuse to proceed with the purchase of the additional ground adjoining the existing school. The additional site involved in the present controversy is something over a mile from the existing school site. It was admitted that, in 1921, the district had voted bonds in the sum of $15,000 for the purpose of building a new school house. Appellant contends that the board will, if it can, buy the property in suit, and use this money for the purpose of building a school building thereon. This is denied by the respondent directors. The allegations of fraud are denied by the directors, as is the claim that the board is attempting to proceed in excess of its authority.

A two-thirds vote is required to remove a school from one site to a new site under the conditions here involved, and a majority vote only to purchase an additional site. This matter involves the following proceedings had by the board of directors of the district, and the voters thereof:

On November 9, 1923, the board held a meeting and passed a resolution directing the clerk to call a special school district meeting for December 8, 1923, from four o'clock p. m. to eight o'clock p. m., for the purpose of determining whether or not the purchase of the additional school site of two acres from the Standard Oil Company, as described on another page of the record of the board of directors, should be made, and it was decided to have the voting by secret ballot, and that the entire board of directors would officiate.

Thereupon the clerk gave the following notice of the meeting:

"Notice of Special School District Meeting.

"Notice is hereby given that a special meeting of the legal school electors of School District No. 171 of Medina, King County, Washington will be held at school house in said District on the 8th day of December, 1923, beginning at the hour of 4 p. m. of said day for the purpose of determining whether or not to purchase Standard Oil Tract as additional school site,     .       .       .       Price $2,800.00. Polls close at 8 p. m. By order of the Board of Directors.

"Dated this 24th day of November, 1923.

.                          (Signed) R. Zaloudek,
                                "School District. Clerk."

Upon arrival at the school house on December 8, at 4 p.m., the directors Bechtel and Flagg took the oath that they would act as judges of the special meeting to be held on the 8th day of December, 1923, at the school house, and attend the special meeting during its continuance, etc. Zaloudek took an oath as clerk of the school board following the form used by the directors.

After this special meeting or election of December 8, the board of directors met to consider the results thereof, and made the following entries on the minute books of the district:

"School Board authorized a special school district meeting to be held at School House on December 8, 1923, from 4 p.m. to 8 p.m. The purpose of the meeting was to determine whether or not the Board was to purchase the two acres of the Standard Oil Company at $2,800.00, and fully described on page 24 of these minutes.     .       .       .       The voting starting promptly at 4 p.m., and ceased promptly at 8 p.m.   One man coming purposely from Yakima to vote was denied the right as he arrived three minutes past 8 p.m. Ballots were printed on white paper and numbered consecutively and 'had the following notation:     .       .       .       Shall School District No. 171 purchase the Standard

Oil Tract as an additional school site for the sum of $2,800.00? The results of the vote were as follows: Total votes cast 183; Total votes 'Yes' 98; Total votes 'No,' 85.' ''

The evidence shows that there are about 200 legal voters of the school district, and that 183 of them voted at this special meeting or election.

Appellant contends that the Laws of 1921, p. 179 [Rem. Comp. Stat., § 5143], provided that all general and special elections in counties of the first class and class A counties, whether for the election of municipal district officers or for the submission to the voters of any city, town, township or district, or for the adoption, approval or rejection, shall be held on the first Tuesday after the first Monday in May in the year in which they are called. An amendment to this law, ch. 53, Laws of 1923, p. 171 [Rem. 1923 Sup. § 5143], provides for the holding of elections where emergencies exist whenever requested so to do by resolution of the governing board of such municipality or district, by the election officers of such county.

Brushing aside some of the contentions of appellant, as for instance, that the school directors are in fact purchasing the additional site for the purpose of changing the present site, and removing the present school thereto, and that there was in fact no election authorizing such change of site in conformity with the law, until these questions come squarely before us, since at present the school officers disclaim any such intention, we will proceed to consider what we believe to be the determining factor in this case.

At the trial the respondent directors disclaimed any attempt to hold any election either general or special. The trial court held that their proceedings on December 8, were sufficiently regular, even though somewhat

informal, to manifest the will of the majority of the electorate under our decisions in *State ex rel. School District No. 56 v. Superior Court,* 69 Wash. 189, 124 Pac. 484; *Regan v. School District No. 25,* 44 Wash. 523, 87 Pac. 828, and *Sorenson v. Perkins & Co.,* 72 Wash. 16, 129 Pac. 577.

We are obliged to hold that the notice in this case was sufficient under the cases above cited, and it is that directed by the state superintendent under the school code, with the exception of the addition to the notice that the polls would close at 8 p.m. In the *School District No. 56* case, *supra,* cited and relied upon by the trial judge, there is a distinction in the facts. In that case, the voters of the district convened in a special meeting in a deliberative form as contemplated by law, but voted by rising vote instead of by ballot as the statute directs. This court observed that there was no requirement in the statute that ballots shall be upon white paper, that ballot boxes shall be prepared or judges appointed to receive and count the ballots; that it does not provide what the ballots shall contain, nor require secrecy as to the ballots or manner of voting; in fact, none of the requirements usually accompanying the usual form of election are made essential. And, furthermore, that no original provision of the statute, either direct or implied, declares an election void if the requirements of the statute are not followed in detail. It was therefore held that the manner of voting was merely directory, and that, since there was no contention that the election complained of did not express the popular will of the electors, it would not be held invalid. Similar informalities were passed over as not invalidating an election for such purposes in the other cases cited.

In this case, no special meeting of the electors of the district was held. The electors did not convene at the hour of 4 p.m., or at any other hour to hold a meeting and confer upon the proposition of buying the additional school site. The voting commenced as if at an election. The electors came, voted, and went away. The special meeting contemplated by the statute of the electors of school districts means a deliberative assembly. We may say, also, that such deliberative assembly, when duly convened, has authority, and the only authority in such school district, to provide by a majority vote for the acquisition of an additional school site, under Laws of 1909, p. 349, § 1 [Rem. Comp. Stat., § 5028], which is the school code of the state; and this is true regardless of the fact that, when an election is required to determine by a two-thirds vote on the question of the removal of a school site, such election may be required to be called by the election officers of class A counties or counties of the first class, under ch. 61, Laws of 1921, p. 179 [Rem. Comp. Stat., § 5143], and ch. 53 Laws of 1923, p. 171.

A school district meeting is described in *Regan v. School District No. 25, supra,* as follows:

"But the meeting provided for by § 2442 is not an election, and we do not think that there is anything in the statute requiring a vote by ballot, a ballot box or the keeping open or closing of polls. It was a meeting of the voters of the district for conference and consultation, fashioned after the town meetings of the New England and other older states of the Union. That it was not intended to be an election is evidenced by the fact that no provision is made by the statute, for an inspector, judges, or other election officers; but provision is thereby made for a chairman and a clerk of such meeting and for a record of the proceedings to be kept, certified and filed by said clerk."

At the time that case was decided, there was no provision in the law requiring the electors assembled to vote by ballot, but the act of 1909 amended the former law by inserting "The voting shall be by ballot, the ballots to be of white paper of uniform size and quality." Laws of 1909, p. 350, § 2 [Rem. Comp. Stat., § 5029].

Such New England or town meetings are clearly distinguishable from elections. *Chicago & Iowa R. v. Miller,* 101 Ill. 583.

"The school meeting is a meeting of the qualified electors of the district at which all business of the district upon which they are to vote is to be transacted, and the term 'District Meeting' means the coming together and assembling of the electors in a body at a stated time and place."

*Parker v. School Dist. No. 4,* 17 Wyo. 534, 101 Pac. 944.

"It is well settled that the powers given to any legislative or other deliberative body must be exercised by the body itself, and cannot be exercised by the members thereof in their individual capacity, although all of the members join in the act."

*State ex rel. Bruce v. Davidson,* 32 Wis. 114.

So here, although each of the two hundred electors of this district may have exercised his judgment in his individual capacity, he did not meet with the other electors of the district in a deliberative legislative body. The purpose of the statute was, therefore not complied with. These are matters of substance, not merely irregularities.

We are therefore of the opinion that, there being no legal meeting of the voters of the district, as provided by statute, on December 8, 1923, the directors of the district are not authorized to proceed to purchase the

additional school site by the attempted election then held.

The judgment is therefore reversed.

MAIN, C. J., FULLERTON, PARKER, and MACKINTOSH, JJ., concur.