(No. 4475.    March 29, 1927.)

DAVID C. PETRIE, R. W. BESECKER, V. E. THOR-SELL, L. N. B. CARPENTER and LAFE BOONE, Respondents, v. COMMON SCHOOL DISTRICT No. 5, IN ADA COUNTY, STATE OF IDAHO, C. C. HINK-SON, G. F. RENSHAW, E. H. COFFIN, as Trustees of Said COMMON SCHOOL DISTRICT No. 5, and LURA V. PAINE, as County Superintendent of Public Instruction of Ada County, State of Idaho, Appellants.

[255 Pac. 318.]

APPEAL AND ERROR—APPEAL ON JUDGMENT-ROLL—EXTENT OF REVIEW — SCHOOLS AND SCHOOL DISTRICTS — PUBLIC SCHOOLS — ANNUAL SCHOOL MEETING—FUNCTIONS—ATTEMPTED LEVY OF SPECIAL TAX HELD UNAUTHORIZED—CONTRACT FOR SCHOOLHOUSE ADDITION HELD VOID.

1. Where appeal is on judgment-roll alone, the only question for determination is whether the judgment in case tried by court is supported by the findings.

2. Under Laws 1921, chap. 215, secs. 14, 16, 18, 42, 45, sec. 44, amended by Laws 1923, chap. 21, and sec. 50, amended by Laws 1923, chap. 169, relative to school elections, the annual school meeting is empowered to exercise functions of a de-

liberative assembly at which qualified electors of common school districts may discuss and dispose of general questions pertaining to the school and its interests.

3. Attempted levy by trustees of school district of special tax pursuant to meeting, wherein trustees prevented the organization of such meeting as a deliberative assembly, as required by Laws 1921, chap. 215, secs. 14, 16, 18, 42, 45, sec. 44, amended by Laws 1923, chap. 21 and sec. 50 amended by Laws 1923, chap. 169, *held* unauthorized, and contract for construction of addition to schoolhouse and furniture to be paid by such special tax void, in view of Const., art. 8, sec. 3, forbidding school districts from incurring indebtedness in excess of income provided.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Action for injunction. Void tax levy. Judgment for defendants. *Affirmed.*

Delana & Delana, for Appellants.

Even though a statute requires separate ballot, one or more propositions may be submitted on the same ballot if each proposition is separately stated and the voter is given an opportunity to vote for or against each proposition separately. (*In re Arnold,* 66 N. Y. Supp. 557; 20 C. J., p. 149, sec. 178, notes 7–9.)

Where propositions are to be voted upon at an election, the propositions need not be printed in full on the ballot. (*State v. Gordon,* 231 Mo. 547, 133 S. W. 44, at 46; *State v. Stearnes,* 72 Minn. 200, 75 N. W. 210, at 215; *Hubbard v. Woodum,* 87 Me. 88, 32 Atl. 802, at 815; *Lovett v. Ferguson,* 10 S. D. 44, 71 N. W. 765; *Williams v. Shoudy,* 12

Publisher's Note.

3. Right of electors to vote on school tax questions, see notes in Ann. Cas. 1915B, 1146; 39 L. R. A., N. S., 601.

See Appeal and Error, 4 C. J., sec. 1786, p. 179, n. 25; sec. 2558, p. 666, n. 17.

Schools and School Districts, 35 Cyc., p. 876, n. 61 New, p. 951, n. 95, p. 974, n. 13, p. 1011, n. 89.

Wash. 362, 41 Pac. 169; *Kinney v. Howard*, 133 Iowa, 94, 110 N. W. 282; *State v. Winnett*, 78 Neb. 379, 15 Ann. Cas. 781, 110 N. W. 1113, 10 L. R. A., N. S., 149.)

Voters may be compelled to vote upon a number of different items as a whole, providing the different items are included within one purpose and constitute a single proposition. (*Howard v. Independent School Dist.*, 17 Ida. 537, 106 Pac. 692; *State v. Gordon, supra; Board of Education v. Woodworth*, 89 Okl. 192, 214 Pac. 1077; *People v. Counts*, 89 Cal. 15, 26 Pac. 612; *City of Oakland v. Thompson*, 151 Cal. 572, 91 Pac. 387; *Clark v. City of Los Angeles*, 160 Cal. 317, 116 Pac. 966; *Coleman v. Town of Eutaw*, 157 Ala. 327, 47 So. 703; *Mitchell v. Charles City*, 169 Iowa, 237, 148 N. W. 975.)

The rule as to what constitutes a single purpose or proposition is much more liberal when applied to school district elections. (*State v. Gordon, supra; Board of Education v. Woodworth, supra.*)

If there is a semblance of a fair vote, the result of the election should be upheld, regardless of informalities or irregularities. (Cooley on Taxation, pp. 573, 574; *Sizemore v. Board of County Commrs.*, 36 Ida. 184, 210 Pac. 137; *Weisgerber v. Nez Perce County*, 33 Ida. 670, 197 Pac. 562; School Laws, 1921 Session, p. 436; *Huffaker v. Edgington*, 30 Ida. 179, 163 Pac. 793.)

The annual or general meeting is an election. (1921 Sess. Laws, sec. 14, p. 435; secs. 16, 17, p. 436; sec. 18, p. 437; sec. 44, p. 446; *Regan v. School District*, 44 Wash. 523, 87 Pac. 828; *Behrens v. Bechtel*, 131 Wash. 508, 230 Pac. 426.)

Martin & Martin, for Respondents.

The annual meeting in common school districts, provided for by the laws of Idaho, is a deliberative body charged with the duty of considering and determining certain matters, by collective action, and not an election. (Sess. Laws 1921, pp. 435–437, 445, 446, 456; Sess. Laws 1923, pp. 21, 254; *Behrens v. Bechtel*, 131 Wash. 508, 230 Pac. 426; *Parker v. School Dist. No. 4, Sweetwater Co.*, 17 Wyo. 534, 101 Pac.

944; *Commercial State Bank v. School Dist. No. 3*, 225 Mich. 656, 196 N. W. 373; *Jennings v. Clearwater School Dist.*, 65 Cal. App. 102, 223 Pac. 84; *State ex rel. Reinhardt v. Talich*, 112 Neb. 723, 201 N. W. 144.)

Where a statute provides for the levying of a special tax, all requirements of the statute in regard to the making of such levy must be strictly followed. (*Bramwell v. Guheen*, 3 Ida. 347, 29 Pac. 110; *Petrie v. Common School Dist. No. 5*, 38 Ida. 583, 223 Pac. 535; *Ashley v. Richards*, 32 Ida. 551, 185 Pac. 1076; *Goerdt v. Trumm*, 118 Iowa, 207, 91 N. W. 1067; *Parvin v. Wimberg*, 130 Ind. 561, 30 Am. St. 254, 30 N. E. 790, 15 L. R. A. 775; *Union Pacific R. R. Co. v. Troupe, etc.*, 99 Neb. 73, 155 N. W. 230; *Elyria Gas & Water Co. v. City of Elyria*, 57 Ohio, 374, 49 N. E. 335; *Mercur Gold Min. & Milling Co. v. Spry*, 16 Utah, 222, 52 Pac. 382; *People v. Seale*, 52 Cal. 71; *St. Louis & S. F. R. Co. v. Haworth County Treasurer*, 48 Okl. 132, 149 Pac. 1086.)

If it should be held that the meeting which was held on April 21, 1923, sufficiently complied with the law to constitute an annual school meeting, then said meeting did not determine to raise the sum of $10,256 or any other sum by special taxation, and did not determine the purposes for which any money derived from special taxation should be expended or name in any instance the proportion of the whole amount which was to be used for the various and separate purposes. (*Blaine v. City of Seattle*, 62 Wash. 445, Ann. Cas. 1912D, 243, 114 Pac. 164; *Ostrander v. City of Salmon*, 20 Ida. 153, 117 Pac. 692; *Stern v. City of Fargo*, 18 N. D. 289, 122 N. W. 403, 26 L. R. A., N. S., 665; *Lannigan v. Town of Gallup*, 17 N. M. 627, 131 Pac. 997 (see par. 5, p. 1003); *Elliott v. Tillamook Co.*, 86 Or. 427, 168 Pac. 77 (see pars. 1, 2, p. 79); *Rea v. La Fayette*, 130 Ga. 771, 61 S. E. 707; *State v. Wilder*, 217 Mo. 261, 116 S. W. 1087; *Ross v. Lipscomb*, 83 S. C. 136, 137 Am. St. 794, 65 S. E. 451; *Woodlawn v. Cain*, 135 Ala. 369, 33 So. 149, Secs. 16–18, Sess. Laws 1921, pp. 436, 437.)

The contract entered into by the trustees for the construction of the schoolhouse was illegal and void. (Const., art. 8, sec. 3; *Dunbar v. Board of Commrs.,* 5 Ida. 407, 49 Pac. 409.)

Upon appeal from a judgment where the record consists of the judgment only, as in this case, and where the findings are responsive to the material issues presented by the pleadings and sustain the conclusions of law and the judgment entered, a judgment will be affirmed. (*Bergh v. Pennington,* 33 Ida. 726, 198 Pac. 158.)

VARIAN, Commissioner.—This action is brought by respondents as taxpayers and electors of School District No. 5 of Ada county, to restrain the defendant trustees of said school district from reporting and certifying a certain attempted levy of a five mill tax for high school tuition for the year 1923, and declare said levy void; to declare an attempted levy of ten mills to raise $10,256 special tax for said year void, that the levy of said special tax be restrained and that respondent trustees be enjoined from reporting said levy to the clerk of the board of county commissioners; that a certain contract with one R. L. Gray for the construction of an addition to the schoolhouse in said district be declared void, that said trustees be enjoined from issuing warrants in payment of the cost of said construction and that the appellant Lura V. Paine be restrained from countersigning said warrants; that said trustees and county superintendent of public instruction be likewise restrained from issuing or countersigning any warrants for the payment of any indebtedness on account of furniture to furnish said addition and from paying, or contracting, any indebtedness on account of said furniture.

The case was formerly before this court on appeal from a judgment sustaining a demurrer to the amended complaint, *Petrie v. Common School Dist. No. 5,* 38 Ida. 583, 223 Pac. 535, where it was held that the amended complaint stated a cause of action in equity and that injunction would lie. The

district court found for respondents and the injunctions issued.

[1]    This appeal is upon the judgment-roll alone, and the only question to be determined is: Do the findings support the judgment?

It is not necessary to refer to all of the findings, which are very voluminous.

On March 27, 1923, the clerk of the board of trustees of respondent school district caused notice of the annual school meeting of said district to be given by publication in a newspaper published in Ada county. Said notice is dated March 27, 1923, and provides:

"Notice is hereby given, that the annual school meeting of Cole Common School District No. 5, Ada County, State of Idaho, will be held on Saturday, the 21st day of April, 1923, and the said meeting shall convene at 1 o'clock P. M. on said day and continue uninterruptedly until the business properly coming before said meeting is disposed of, at the school house in said district; that at said meeting the following business will be transacted . . . . "

The notice then proceeds to declare what trustees shall be elected; that the meeting will determine certain things provided by statute, the length of the school year and its seasons, and—

"5. That at said meeting in said district will be determined the amount of money to be raised by special taxation, the levy for which purposes shall not exceed ten (10) mills on the dollar of taxable property in the said district, and shall determine the purpose for which the money derived therefrom shall be expended, naming in each instance the proportion of the whole amount which is to be used for various and separate purposes"; that questions pertaining to school and school interests will be taken up.and disposed of at said meeting and that the election shall be by secret and separate ballot.

A bond election was noticed by the clerk to be held at the same time and place, which failed to carry by the necessary two-thirds' vote, and is not an issue here.

44 Idaho—7

On the Monday evening previous to the date of the annual school meeting the trustees, at a meeting attended by them and a few voters, selected two sets of judges and clerk, one to act at the bond election and one to conduct the annual meeting. The trustees alone made the selection of judges and clerks.

About seventy-five voters were present at 1 o'clock P. M., April 21, 1923, the date of the annual school meeting, and were called to order by the chairman of the board of trustees. One of the trustees then placed in nomination the two sets of judges and clerk selected by them on the previous Monday evening, to act as judges and clerk of the annual school election and bond election, respectively; both sets were elected, and sworn in. Both polling places were established by the trustees in the same room, and voting was carried on concurrently until 7 o'clock P. M., when the polls were declared closed.

At the time judges and clerks were elected on April 21, 1923, five or six voters there present demanded that an annual school meeting be organized by the election of chairman and secretary, and that said meeting proceed to consider the budget and other school matters. This demand was renewed and continued until they were notified by the trustees that unless they desisted, the trustees would call upon the sheriff, then present at the request of said trustees, to eject one Elliott from the meeting, he being one of said objecting voters. No further attempt was made to have said meeting organize.

About the beginning of the voting the clerk of the board wrote upon the blackboard in the room where the election was being held a budget for the school expenses of said district for the ensuing year which was as follows:

| | |
|---|---|
| Teachers' salaries | $6,225 |
| Text books | 75 |
| Supplies | 325 |
| Fuel | 420 |
| Repairs | 275 |
| Janitor | 550 |

|  |  |  |
|---|---|---|
| Insurance | 220 | |
| Other expenses | 115 | |
| Library | 96 | |
| New furniture | 500 | |
| Estimate to finish year | 4,968 | |
| New buildings | 4,500 | |
| Estimated receipts | | $8,013 |
| To be raised by tax | | 10,256 |

Included in the estimate for teachers' salaries is the salary for one teacher in one room of the new building to be built, but was not so designated in the budget so written on the blackboard. When asked by voters if they could vote *against* the items for new school buildings and furniture for the same, and *for* the other items of school expense, the clerk of the board of trustees informed such voters that they must vote "Yes" or "No" on the budget as a whole. When asked by a voter what would happen if the budget as a whole was adopted and the bond election to build a new schoolhouse also carried, the clerk replied that the trustees would in that case ask the county commissioners to omit such item from the levy. A voter was also told by the clerk of the school board, in answer to his inquiry as to what kind of schoolhouse would be built, that that had not yet been determined; it might be a bungalow or it might be an addition to the schoolhouse. This was the only discussion of the budget. At the time it was placed on the blackboard and the discussion had there were about seventy-five voters in the room. About two hundred voters not then present, afterwards attended and voted at the election, and they did not know what was meant by the question stated on the ballot, "Tax for General School Purposes," "Special Tax Yes" and "Special Tax, No." The budget written on the blackboard had been prepared by the trustees and the appellant Lura V. Paine, superintendent, of public instruction, previous to day of election.

No sum of money was written or printed upon the ballot used in voting upon the budget. The annual meeting was never organized and the budget was never discussed except

as above mentioned, nor did the meeting at any time consider the budget or its various items. No opportunity was given voters to discuss, amend or change the budget or to intitiate any matter in connection therewith, or its various items, nor did said meeting discuss or decide upon any question to be voted upon thereat. The voters were not given an opportunity to vote and did not vote, separately, on the item of $4,500 for new building, or upon the item of $500 for furnishing the same, or in any way except the general question submitted on said ballot. The question of the purposes for which money to be raised by special taxation for the year 1923 should be expended was not considered by the meeting nor the proportion of the whole amount thereof which should be used for the various separate purposes, or any purposes, except by voting upon said ballot. The amount of money to be raised by special taxation in said district for the year 1923 was not submitted to said meeting nor voted on thereat except by writing the same on the blackboard and voting on said ballot.

The question of a levy of five mills for high school tuition purposes was not discussed nor explained, or considered except by voting upon said ballot, and no opportunity was given to change the amount of mills that had been placed upon said ballot as prepared by the trustees prior to said meeting. During the time the voting was going on during the afternoon the attention of voters was not called to the fact that the budget was written on the blackboard, nor was the same explained. The court specifically found "that said meeting was never organized as a deliberative body to consider any matter and no deliberative meeting was held, but it was throughout from 1 o'clock P. M. to 7 o'clock P. M. of said day an unorganized mass of electors voting at two simultaneous elections on questions submitted by said school trustees at two separate polling places, the electors coming from their homes into said room and voting and soon thereafter retiring from said room." No separate ballot was used for voting upon any question. The polls were closed at 7 o'clock P. M. and the votes counted and a return made by

the judges and clerk of election to the county superinten-
dent. After reciting the qualifying of judges and clerk and
the result of the election of trustees, the return certifies
that "It was decided at said annual meeting to vote upon
the question whether or not a special tax (of ten mills)
sufficient to produce $10,256 should be levied for the purpose
of meeting school expenses.

"A vote was therefore taken by secret and separate ballot,
in which 226 votes were cast. Of these 136 votes were
'Tax, Yes' and 90 votes were 'Tax, No.' There being a
majority in favor of the tax, the trustees were authorized
to report the amount to be raised to the proper officials for
their action.

"A vote was then taken by secret and separate ballot to
determine the length of the school term. By a majority
of 121 votes a 9 months' term of school was decided upon.

"A vote was then taken by separate and secret ballot to
determine the seasons of the year, in which school might be
taught. By a majority of the votes the following seasons
were determined":

Thereafter the chairman and secretary of the board of
trustees certified to the county superintendent that a major-
ity of votes cast at the election authorized the levy of a spe-
cial tax of ten mills on the dollar sufficient to raise $10,256
for school purposes, and ordered that the board of county
commissioners at the time of making their annual levies
make a special levy of the taxable property of said school
district sufficient to produce said amount. At the end of
said certificate, to the left of the signatures of the certifying
officers, appear the words "In addition to above a 5 mill
high school tax was voted."

The court found that "because of the manner in which
said meeting was conducted as aforesaid the statements in
said return by said judges and clerk of election, and in said
certificate by the chairman and clerk of the board of trustees,
of said School District No. 5, were in fact not true, that the
annual meeting as required by law, was not held in said
common school district, and that the meeting held on April

21, 1923, was not held in the manner prescribed by law for an annual meeting, at said meeting it was not determined to raise $10,256.00 by special tax levy, or to levy five mills for high school tuition purposes in said District for the year 1923. And the manner of conducting said meeting rendered the matters done thereat of no effect and void.''

Thereafter the chairman and clerk of the board of trustees of said school district certified to the clerk of the board of county commissioners of Ada county the sum of $10,256 to be raised by special tax upon the property of the said school district°for 1923, stating that the same had been voted and authorized, together with a levy of five mills for high school purposes for said year, at said annual meeting. The court found ''that said certificate so made by the chairman and secretary of the board of trustees of said school district was unauthorized by the action of said annual meeting and was ineffective and void and insufficient to authorize such tax levy or to make such tax levy on the property within said school district.'' And that the taxes so levied constitute a cloud upon the title of plaintiff and other taxpayers and that they have no plain, speedy or adequate remedy at law in said matter.

The court further found that about June 30, 1923, the appellant trustees entered into a contract for the construction of an addition to the schoolhouse, agreeing to pay therefor approximately $6,000, and that said construction was started but suspended upon the filing of this suit; that the building of said addition was not authorized by the voters at said annual meeting and that the levy of a special tax to raise money to pay for same was not authorized at said annual meeting; that the school district has no funds to pay for said addition and at the time of entering into the contract for the construction thereof the funds in the treasury of said school district were about $750, and at no time since had the money for building said schoolhouse, and did not contemplate having funds to pay therefor except through the collection of said special tax before mentioned.

The court also found that unless restrained by the court the trustees and the said contractor would proceed with the construction of said schoolhouse and the payment therefor, drawing warrants upon the treasury to pay for the same, which warrants would be countersigned by the county superintendent and delivered to the contractor as legal obligations of said school district; that unless restrained the trustees would purchase furniture in the sum of $500, to prevent any of which things being done, respondents have no plain, speedy or adequate remedy at law; and that the said trustees were without authority to enter into said contract for building said addition and that said contract is unenforceable and of no effect.

As conclusions of law the court found: That no annual school meeting was held in Common School District No. 5, as provided by law, in 1923; that the certificate filed with the clerk of the board of county commissioners of Ada county, to the effect that the meeting had authorized the levying of a special tax of ten mills to raise $10,256 and a special tax of five mills for high school tuition purposes, requesting said board of county commissioners to make said levy, was unauthorized, contrary to law and of no effect, and insufficient to. authorize such tax or to make such levy; that the contract for the construction of the addition to the schoolhouse was unauthorized and contrary to law, and that an injunction should issue restraining the carrying out of said contract or the building of said addition and from ordering or drawing warrants to pay the same, and for furnishing said addition; and that the appellant Lura V. Paine, county superintendent of public instruction, be restrained from countersigning any warrants drawn upon the funds of said school district to pay for the construction of said schoolhouse.

The assignments of error are grouped under six heads by appellants, but it will only be necessary to consider those grouped under the head relating to the validity of the annual school meeting held on April 21, 1923, the finding of the court being to the effect that no valid meeting was held

and that the special levies voted were invalid and the contract for the addition to the schoolhouse building void.

Other states have statutory provisions for an annual school meeting designed to function as a reflective and deliberative body. In some of the states these statutory enactments are somewhat similar to our own, but all so differ in their requirements that decisions interpreting them afford little light in construing our own statutes. See *Behrens v. Bechtel,* 131 Wash. 508, 230 Pac. 426; *School Dist. No. 1 v. Gerold,* 76 Colo. 555, 233 Pac. 162; *Commercial State Bank v. School Dist. No. 3,* 225 Mich. 656, 196 N. W. 373; *Jennings v. Clearwater School Dist.,* 65 Cal. App. 102, 223 Pac. 84; *State ex rel. Reinhardt v. Talich,* 112 Neb. 723, 201 N. W. 144. It must suffice, therefore, to consider the several sections of our statutes that relate to the subject in controversy.

Appellant school district is a common school district within the definition of Sess. Laws 1921, chap. 215, as amended in 1923. Sec. 42 (Sess. Laws 1921, p. 445), so far as it is applicable here, reads:

"Sec. 42. Annual School Meeting. The annual school meeting in common and joint common school districts shall be held on the third *Saturday* of April, . . . . the annual meeting in common and joint common districts, . . . . shall convene at 1:00 o'clock P. M. on said election day and continue uninterruptedly until the business properly coming before said meeting is disposed of. . . . . The notice must be in form and for the time required notice of school election, and must be given by the clerk of the Board in event of the failure of that official to do so, by any two (2) qualified electors of the district."

Sec. 44, as amended by Sess. Laws 1923, chap. 21, p. 21, relates to the business to be transacted, and is as follows:

"Section 44. Business to be Transacted. In addition to electing a trustee, or trustees to complete or constitute the board, the annual school meeting shall in common, joint common, rural high, and joint rural high school districts determine the length of time school shall be taught in the district for the ensuing year, which shall not be less than

seven (7) months, and shall further transact all business specified by the notice of the meeting, and shall take up and dispose of general questions pertaining to school and school interests.''

"Sec. 45. All questions properly coming before said annual meeting shall, unless otherwise specifically provided, be determined by a majority vote of the qualified voters present and voting thereat.''

At the time of the election under consideration the following provisions of said chapter 215, Sess. Laws 1921, were in force:

"Sec. 14. Notice of Election. Notice of all school elections of whatever nature or for whatever purpose (unless otherwise specifically provided in this act) must be given by posting notice of said election for at least twenty-one (21) days," etc. "Said notice shall state the date of holding said election, the hours between which the polls will be open, the definite place or places of holding the election, and must contain a brief but clear statement of the purpose of said election, and, in case of the annual school election, the name of the office or offices to be filled; and that nomination therefor must be filed at least six days prior to the election, excluding the day of election; and in case of bond election, the amount of the issue, purpose and period of issue, and form and plan thereof.''

"Sec. 16. Election. The polls in all elections in school districts shall be presided over by two judges and one clerk, who must each be qualified voters of the district and must take an oath as such judge and clerk, which oath shall be administered by any qualified voter of the district or districts, and which oath shall obligate the judges and clerk to faithfully perform the duties as a board of election at school elections. . . . .

"All elections shall be by secret and separate ballot, each ballot in print, type or other legible writing, stating in the affirmative and in the negative the proposition to be voted on (and in election of trustees, the names of the persons nominated, in manner as hereinafter provided) and all

ballots shall be in such form that the voters may express a vote by the marking of a cross (×). Unless otherwise specifically provided in this act, it shall require at all school elections a majority of the votes validly cast to carry each proposal.

"In all school elections it is intended that no informalities in conducting such election shall invalidate the same and if the election shall have been otherwise fairly conducted; *Provided, further*, That the Clerk of the School District shall prepare the necessary ballot."

The final paragraph of sec. 17, which relates to proceedings affecting two or more districts, is a general provision, applicable to all school elections, reading as follows:

"At all school elections except those held at annual school meetings the ballot shall be kept in a sealed container until the polls are closed at the time specified in the notice of election."

The opening paragraph of sec. 18 reads:

"Sec. 18. Return and Canvass. Immediately following the close of the polls at the time specified in notice of election, or in the case of the annual school meeting, immediately after the vote has been completed, the Board of Election shall compute the result of the election making the count in the public view."

Sec. 50, as amended by Sess. Laws 1923, chap. 169, p. 254, is as follows:

"Section 50. Tax Levy. The annual meeting in common school districts shall determine the amount of money to be raised by special taxation, the levy for which purpose shall not exceed ten (10) mills on each dollar of taxable property of the district, and shall determine the purposes for which the money derived therefrom shall be expended, naming in each instance the proportion of the whole amount which is to be used for the various and separate purpose. The money derived from special tax may be used for the purpose of supporting and maintaining the schools, buildings, and repairing and adding to school building and property, and purchasing and supplying the school with equipment; . . . .

Provided, further, That when any district described in this section is required to pay high school tuition for any of its pupils attending high school in other districts such annual meeting may provide in addition to the ten (10) mills on each dollar of taxable property herein authorized, the further amount of five mills, or so much thereof as may be necessary, for the purpose of paying such high school tuition and when approved such additional levy shall be levied and collected the same as any part or portion of the ten (10) mill levy herein authorized and the proceeds of such special levy shall be placed in a special fund and used only for the purpose of paying such high school tuition.''

[2] A reading of these sections of the statute leads to the conclusion that the annual school meeting was empowered by the legislature to exercise the functions of a deliberative assembly at which the qualified electors of the common school district might discuss and dispose of general questions pertaining to the school and its interests. It was likewise empowered to fix the length of time in which school should be taught for the ensuing year; to transact any business mentioned in the notice of said meeting; to determine the amount of money to be raised by special taxation, the levy not to exceed ten mills on the dollar; to determine the purposes for which the money so derived should be expended; and, when the school district is required to pay high school tuition, to provide an additional special tax of five mills on the dollar, ''or so much thereof as may be necessary,'' for that purpose. The school board is not empowered by the statute to fix the amount of special taxes, determine the length of the school year, or determine the purposes for which the money raised by special taxation shall be expended.

It is true that the statutes provide that at the annual school meeting ''trustees'' shall be ''elected,'' that in all school elections notice must be given stating the date, hours the polls are open, a brief statement of the purposes of election and, in case of annual school elections, the name of the office or offices to be filled. (Sess. Laws 1921, chap. 21½

sec. 14, *supra.* These provisions in no way change the character of the annual school meeting or make it other than a deliberative gathering. The legislature has required that the election of trustees shall take place at said meeting. There is nothing inconsistent in providing that in the election of trustees the election machinery as to notice and manner of voting should be followed. The legislature has provided for a deliberative body of electors to discuss and determine certain things, and for an election of school trustees to be voted on concurrently with the opening of the annual meeting and until the polls close at 7 o'clock P. M., the annual school meeting to adjourn when its business is finished.

"A popular assemblage for any legal purpose must be regularly convened in such manner as the law may have prescribed. The coming together of a majority of the people of a municipality, or even of all the people, at a time and in a manner not provided by law, and the voting upon the levy of a tax, will have no legal force or validity whatever. In levying taxes, or in exercising any other function of government, the local community can only act under regular forms and according to customary legal regulations; and one of the conditions invariably is, that the power shall be exercised in an orderly manner, at a meeting assembled after due notice, and conducted according to legal forms, in order that there may be full opportunity for reflection, consultation, and deliberation upon the important work to be done. Nothing short of this will insure deliberative meetings, or prevent popular gatherings degenerating into mobs, and thereby defeating the purposes for which they are organized.'' (3 Cooley on Taxation, 4th ed., sec. 1020, pp. 2066, 2067.)

On the former appeal (*Petrie v. Common School Dist. No. 5, supra*), this court having under consideration the identical statutes involved here, approved the rule laid down in *Bramwell v. Guheen,* 3 Ida. 347, 29 Pac. 110, to the effect that where the statute provides for the levying of a special tax by a school district, and prescribes the manner in which

such levy must be made, a compliance with such require-ments is jurisdictional as a preliminary to the levy of such tax.

As found by the learned district judge, the "meeting" held April 21, 1923, was "an unorganized mass of electors voting at two simultaneous elections on questions submitted by said school trustees at two separate polling places, the electors coming from their homes" into the room where the voting was going on and soon thereafter retiring therefrom. The trustees provided for the election feature of the annual school meeting but interfered and prevented the organization of such meeting.

[3] It follows that the judgment is right, and that the contract for the construction of the addition to the school-house is void. No school district can incur any indebted-ness in any year in excess of the income provided for that year, etc. Const., art. 8, sec. 3, which provision has been held mandatory by this court in *Dunbar v. Board of Commrs.*, 5 Ida. 407, 49 Pac. 409.

It is not deemed necessary to discuss other questions raised by this appeal. Recommended that the judgment be affirmed.

The foregoing is approved as the opinion of the court, and the judgment is affirmed; costs to respondents.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

Budge and Taylor, JJ., did not sit at the hearing and took no part in the decision.