Argued Nov. 9, decided Dec. 20, 1910.  Rehearing denied Feb. 21, 1911.

## BAXTER v. DAVIS.

[112 Pac. 410: 113 Pac. 438.]

SCHOOLS AND SCHOOL DISTRICTS—OFFICERS—POWERS.

1. A board of school directors can exercise only powers expressly granted by statute, and such as may be necessary to carry the granted powers into effect.

SCHOOLS AND SCHOOL DISTRICTS—PURCHASE OF SCHOOL SITE—ISSUANCE
    OF BONDS—ELECTIONS.

2. Under Section 3389, subd. 5, B.  C. Comp., authorizing the board of school directors, if authorized by the voters of the district, to purchase or build schoolhouses, buy land for school purposes, and issue bonds, the power to build schoolhouses, purchase sites therefor, and to issue bonds may be conferred by one and the same vote at an election called as authorized by subdivision 31 to vote on the question of contracting a bonded indebtedness to build a school and purchase a site.

SCHOOLS AND SCHOOL DISTRICTS—SELECTION OF SCHOOL SITES—STAT-
    UTES.

3. Under Section 3389, subd. 14, B. & C. Comp., authorizing the school directors to call a meeting to vote on the question of the selection or purchase of a schoolhouse site, construed in connection with subdivision 5, authorizing the board, if authorized by the voters of a district, to purchase land for school purposes, the right to select a schoolhouse site is vested in the electors, and not in the board.

STATUTES—CONSTRUCTION—REPEALED STATUTES.

4. The court in construing a statute may consider repealed statutes.

SCHOOLS AND SCHOOL DISTRICTS—COUNT OF VOTES—"MAJORITY" VOTE.

5. Section 4052, subd. 14, L. O. L., authorizing selection of a school building site by a "majority of the voters present" at a school meeting, requires a vote of more than one-half of those present, and not a mere plurality.

From Union:   JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit by J. W. Baxter, Jr., against M. F. Davis, Thos. Brasher and Leon Levy constituting the board of directors of School District No. 5, Union County, Oregon. Plaintiff, as a resident taxpayer of School District No. 5 of Union County, brought this suit to enjoin defendants, as the board of directors of that district, from purchasing a block of land for a school house site, and from building a school house thereon for the district.  The gist of the

suit is the averment that defendants were acting in the premises without authority of law. The facts were stipulated, and the court entered a decree, awarding the injunction. From this the defendants have appealed.

MODIFIED AND AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief and an oral argument by *Mr. B. F. Wilson.*

MR. JUSTICE SLATER delivered the opinion of the court.

From admissions in the pleadings and facts stipulated, it appears that, pursuant to an order of the board of directors, a district meeting was called, to be held at a fixed time and place in the district, for the stated purpose of submitting to the legal voters thereof "the question of contracting a bonded debt of fifty thousand dollars, for the purpose of building a school building, furnishing the same and purchasing land for school purposes, as a site for said building," etc., that such meeting was duly held, and that by the votes of those attending the meeting the board was authorized to issue and sell the bonds of the district to the amount of $50,000 for the purposes stated in the notice, that, acting upon the authority thus conferred, the board issued and sold bonds to the amount authorized, and thereafter contracted to purchase from the county of Union a block of land, known as the "Old Court House Block," situate in the town of Union, in the district, with the avowed purpose of selecting it as the site for the new school building, and intending to pay therefor the sum of $1,500 out of the proceeds of the bond sale. At the time this suit was brought, the defendants had caused laborers to commence tearing down and removing a brick building standing upon the block, with the purpose in view of erecting a new building thereon, without further

authority from resident taxpayers than their action taken at the said meeting.

It is charged in the complaint that the board failed, neglected, and refused to submit to the vote of the taxpayers the selection of a site, or the question of the necessity for the purchase of additional lands for school house purposes, or the question of the erection of a school house.

To this it was answered that the directors did not deem it necessary in their judgment to call a district meeting for that purpose, and that they were not at any time petitioned so to do by one-third or any number of the voters of the district.

Ballots, upon which were printed the words, "Bonds— Yes," and "Bonds—No," on separate lines, with space reserved upon the left thereof for the marking of the ballot by a cross, to indicate the voter's choice, were prepared in advance for the occasion, and were used by the voters at the meeting.

1. Defendants contend that by the vote cast at such meeting they were authorized, not only to bond the district to the amount named, but also to purchase land for a school house site, and to build and furnish a school building, without further order or direction from the taxpayers; that the authority thus conferred carried with it, by implication, power to do everything necessary to accomplish the object intended; that is, to select the site to be purchased for building purposes. A board of school directors can exercise no other powers than those expressly granted by the statute, and such as may be necessary to carry into effect a granted power: 35 Cyc. 899; *School Directors* v. *Wright,* 43 Ill. App. 271.

2. The power that may be exercised under the statutes by the board of directors in respect to the premises is not absolute and unqualified, but limited to occasions when authorized by a majority vote of the legal voters present at any legally called meeting. The statute reads:

"If authorized by a majority vote of the legal voters present at any legally called meeting, they shall purchase, lease, or build school houses, buy or lease land for school purposes, furnish school houses with furniture, lights and apparatus, and for such purposes, may when so authorized, levy and collect * * a tax, * * or issue or sell negotiable bonds as hereinafter in this act provided." Section 3389, subd. 5, B. & C. Comp.

The board must be authorized by a vote of the legal voters before it has power to act, and this authorization may be in terms as broad as the language of the statute permits; that is, to buy land generally for school purposes, if the right to select a site is not elsewhere reserved, or to lease or build such a building as in the judgment of the board may be desired, and to furnish it with such equipment as the board may deem necessary, or its authority to act may be limited by the voters to the purchase of a particular piece of land at a stated price, or to build a building of a particular design or cost, etc. In the same sentence and in the same connection, the statute confers upon the board another limited power to levy a tax or issue or sell bonds for such purposes, when so authorized, that is by a majority vote of the legal voters present at a legally called meeting, as thereinafter provided. It is apparent that the financial circumstances of the district might be such as to permit an authority to be given for the purchase of land or the erection of a building without the necessity of levying a tax or issuing or selling bonds, and in that event the first power might be exercised without the second, but the first could not be exercised except in conjunction with the second, and we can see no reason why the authority to do both, when circumstances so demand that both must be exercised, may not be conferred by one and the same vote. This has been sanctioned by the Supreme Court of California, in construing the statutes of that state, which are of the same general import as our own: *People* v. *Caruthers School District*, 102 Cal. 184 (36 Pac. 396.)

3. The occasion and manner of calling and conducting an election, where the purpose is to authorize the issuance and sale of bonds of the district, are specified in subdivision 31 of the same section referred to above. The authority to initiate a call for such an election is conferred upon 10 legal voters of the district, who may petition the board therefor. In response to the petition the board must issue the notice, stating therein the amount of the proposed bonded debt, the purpose for which the debt is to be created, that the vote is to be by ballot, upon which shall be the words "Bonds—Yes." and "Bonds—No." An election so called and held, at which a majority of the electors vote "Bonds—Yes," confers authority, not only to issue and sell the bonds of the district in the amount voted, but to disburse the funds received for the particular purposes named. It was under this section that the meeting in district No. 5 was held. The funds derived from the sale of the bonds authorized and sold by the vote at that meeting have been appropriated to the particular purposes stated, and cannot be used for any other. If there is no other provision of the statute, reserving to the voters the right to select the site for a school building, then the board in this case has acted within its authority. But subdivision 14 of Section 3389 provides:

"Whenever, in the judgment of the board, it is desirable or necessary to the welfare of the schools in the district, or to provide for the children therein proper school privileges, or whenever petitioned so to do by one-third of the voters in the district, the district board shall call a meeting * * to vote upon the question of the selection, purchase, exchange, or sale of a school house site," etc.

This subdivision must be construed along with subdivision 5 of the same section hereinbefore noted. On behalf of the defendants, it is contended that the language of the statute above quoted is intended only to provide

when the board shall call a meeting, and that is limited to the occasion when in its judgment it is desirable or necessary, or when petitioned so to do by one-third of the voters of the district, that, in the absence of such petition, the question of calling an election to vote upon the selection of a site for a building is left to the judgment of the board, and that it may perform that duty without the authority of such a meeting.

4. It will be observed that none of the other things mentioned in that subdivision, for which an election is to be held, may be done by the board without authorization of the voters assembled in a district meeting, and we conclude that it must have been the legislative intent to withhold from the board and vest in the electorate the right to select a school house site. We are confirmed in this construction of that clause by an examination of the state of the law prior to the date of the enactment of this statute, for repealed statutes may be taken into consideration in construing statutes: Sutherland, Statutory Construction, § 452. This act was approved February 20, 1901 (Sess. Laws 1901, pp. 23, 65), and repeals Title IV, c. 16, Hill's Code. Subdivision 3 of Section 2602 thereof contains, so far as material to this case, the identical language of Section 3389, subd. 5, B. & C. Comp., and subdivision 21 of Section 2602 of the repealed statute expressly vested in the board of directors the power to locate sites for school houses. A re-enactment of the former and a repeal of the latter, accompanied by a substitution of the language found in subd. 14, Section 3389, B. & C. Comp., for the section repealed is conclusive that the legislative intent was to take from the board the power to make the selection of a school house site, which it formerly possessed, and to vest that power solely in the legal voters, to be ascertained at a district meeting, which must be called by the board either when acting upon its own judgment,

or when petitioned therefor by one-third of the legal voters of the district.

The decree, however, will be so modified as to limit the continuance of the injunction order made by the trial court until such time as a majority of the legal voters of the district, present at a legally called school meeting, shall select such "Old Court House Block" as a site for a school house. In all other respects the decree is affirmed. No costs will be allowed to either party.

MODIFIED AND AFFIRMED.

Decided February 21, 1911.

ON PETITION FOR REHEARING.

[113 Pac. 438.]

MR. JUSTICE MCBRIDE delivered the opinion of the court.

5. By the petition for rehearing filed by appellants we are asked to construe subdivision 14, Section 4052, L. O. L., so as to permit the selection of a site for a school house by the vote of plurality of the persons present at a school meeting.

That part of subdivision 14, relating to the matter under discussion is as follows:

"If a majority of the voters present at such meeting shall by vote select a school house site * * the board shall locate, purchase, * * in accordance with such vote."

This language seems to us too plain to require any construction. We have sought in vain for a case holding that, under any circumstances, the word "majority" can be construed to mean "plurality." A "majority of the voters present" at a meeting means more than one-half of those present, and it would be a perversion of language to hold that it means a less number. See Adjudged Words & Phrases, title "Majority," and cases there cited.

The petition is denied.

MODIFIED AND AFFIRMED: REHEARING DENIED.