Argued January 31, affirmed March 26, rehearing denied April 30, 1929.

## KLAMATH COUNTY SCHOOL DISTRICT *v.* AMERICAN SURETY COMPANY.

(275 Pac. 917.)

For appellant there was a brief and oral argument by *Mr. J. H. Carnahan.*

For respondent there was a brief over the name of *Messrs. Kuykendall & Kuykendall,* with an oral argument by *Mr. Robert B. Kuykendall.*

*Messrs. Teal, Winfree, McCulloch & Shuler,* on brief as *amici curiae.*

BEAN, J.—The cause was submitted and determined by the court, without a jury, on the pleadings

between the plaintiff and the defendant American Surety Company of New York and an agreed statement of facts. Defendant Van Riper was not served with summons or complaint and did not appear, but was out of the state. By the stipulation all of the legal questions arising on the pleadings were reserved.

The facts deemed essential to state, as shown by the stipulation are substantially as follows:

The defendant G. K. Van Riper was the duly elected, qualified acting treasurer of Klamath County, Oregon, from January 3, 1921, to January 5, 1925. On or about December 11, 1920, he executed and delivered to the State of Oregon his official undertaking, or bond, as such treasurer, with the defendant American Surety Company of New York as surety. About May 1, 1921, School District No. 53 in Klamath County duly issued and sold its bonds to Clark Kendall & Company in the amount of $31,479, the sale netting the district $30,000 cash.

About June 9, 1921, School District No. 53 had the bonds taken to the office of G. K. Van Riper, the county treasurer of Klamath County, and requested the treasurer to register the bonds. The treasurer entered the name, number, amount, and the like of each of said bonds in the registration book of the county treasurer and thereupon signed a registered certificate on each of said bonds, and thereupon delivered the said bonds to one Oscar Shive of the American National Bank of Klamath Falls, who had taken the bonds to the county treasurer for the school district.

This delivery was made without the treasurer receiving the money for the bonds. The net amount derived from the sale of said bonds was thereafter

paid by Clark Kendall & Company to School District No. 53 and deposited in the American National Bank of Klamath Falls to the credit of said School District No. 53. Thereafter the board of directors of School District No. 53 transferred $15,000 of said moneys from the American National Bank of Klamath Falls to the First National Bank of Klamath Falls, Oregon, and thereafter the said board of directors transferred the last-named $15,000 from the First National Bank of Klamath Falls, Oregon, to the First State and Savings Bank of Klamath Falls, Oregon, now insolvent, and received certificates of deposit therefor.

Thereafter the First State and Savings Bank of Klamath Falls became insolvent and the funds have never been repaid to School District No. 53 or to the plaintiff herein, or any part thereof, except $4,500, which was paid to Klamath County, and the plaintiff herein given credit therefor May 23, 1927, and the balance of the $15,000 was wholly lost to School District No. 53 and to the plaintiff Klamath County School District.

At the election duly held on the seventeenth day of May, 1922, the County Court of Klamath County duly submitted to the legal voters of said county the question whether or not Chapter 265, of the General Laws of Oregon for 1921 should become effective in said county. Thereafter on the twenty-second day of May, 1922, the County Court duly canvassed the votes cast upon said measure at the election and found that a majority of said votes were in favor of making said act effective in said Klamath County and thereafter, by an order duly entered the twenty-seventh day of May, 1922, said court declared said measure, that is, Chapter 265 of the General Laws of Oregon

for 1921, was carried and said act adopted and in full force and effect in Klamath County, Oregon and Klamath County School District was thereby created.

The American Surety Company of New York, which we will hereafter term the defendant, contends that said Chapter 265 is unconstitutional and void as repugnant to Section 3 Article VIII of the Constitution of Oregon, which prescribes a uniform and general system of common schools of the state. And that, therefore, the plaintiff has no legal existence; that any judgment paid to the plaintiff by this defendant would not protect this defendant from being sued again for the same amount by School District No. 53 of Klamath County, Oregon, which defendant claims to be the real party at interest herein.

This appears to be stressed as the main question in the case. Chapter 265, General Laws of Oregon 1921, as in force during the time involved herein, provides in part as follows:

"Section 1. In any county in which this act shall become effective there shall be three classes of school districts, known as city school districts, town school districts and county school districts, which shall be constituted and administered as hereinafter provided.

"Section 2. Each city or incorporated town, together with any contiguous territory attached to it for school purposes, having 1,000 or more children of school age, as shown by the latest school census, at any time shall constitute a city school district. Such district shall be maintained, operated and administered under the laws heretofore effective in districts of the first class; provided, that all laws heretofore effective in districts having more than 20,000 children of school age shall continue in full force and effect in any such district; and provided further, that all reports and appeals heretofore required or permitted by law to be made to the county school superintendent are hence-

forth respectively required or permitted to be made to the state superintendent of public instruction.

"Section 3. Each town or village, together with any contiguous territory attached to it for school purposes, having more than 500 and not more than 1,000 children of school age as shown by the latest school census, shall constitute a town school district; provided, that two towns or villages heretofore located in adjoining school districts of the second class shall be considered as a single town for the purpose of this section; provided, the voters of each such heretofore existing district shall at the next annual school election as heretofore provided by law for the consolidation of such districts vote to approve the creation of a town school district embracing both the aforesaid towns or villages.

"Section 4. All the territory of any such county not included in a city school district or a town school district shall constitute a county school district.

"Section 5. All school districts now existing or that shall be organized in pursuance of this act shall be to all intents and purposes bodies corporate, competent to transact business coming under their jurisdiction and sue and be sued. When suit is commenced against a district, service must be made on one of the directors. All the property, real and personal, heretofore belonging to all second and third class districts and joint districts heretofore existing within the corporate limits of each school district created by virtue of this act, shall become the property of said school district and be subject to control of the district school board of said school district chosen in accordance with this act or representatives appointed by said board. All indebtedness now outstanding, whether evidenced by bonds, warrants or otherwise of any heretofore second or third class district, or joint district coming under the supervision and control of the district school board by virtue of this act, shall be and become the obligations of said school district created by virtue of this act."

The act then provides for the officers of each school district created under the act, and for the election thereof and makes various provisions regulating school districts.

Section 30 of Chapter 265, General Laws of 1921, provides that the act shall not become effective in any county until the same shall have been regularly submitted to the voters of such county at a general or special election, and a majority of the votes cast, shall have been in favor of making such act effective; but the same shall become effective immediately in each county so adopting the same, providing no city having a population of more than 50,000, in any county voting hereon, shall participate in such election and such city shall be exempted from such election.

The act further provides for the manner of submitting the measure to the legal voters of the county, and for the County Court to canvass the votes and declare the result.

Section 12 of the act provides that the district school board shall employ a superintendent of schools for the district, and fix his term of office and compensation, after the expiration of the term of the county school superintendent at the time the act becomes effective. This act was amended by Chapter 139, General Laws of Oregon 1927, which does not affect this case.

It is stipulated that the clerk of the School District No. 53, executed a bond as such clerk with the Fidelity & Deposit Company of Maryland as his surety. Under the statute this is not material.

"That plaintiff on or about August 22nd, 1922, at Klamath Falls, Oregon, demanded of G. K. Van Riper and this defendant American Surety Company, that

they deposit said sum of $15,000 to the credit of the plaintiff, as successor in interest of said School District No. 53; that the said county treasurer and said American Surety Company have refused to comply with said demand.

"That at the expiration of his term of office, the defendant county treasurer aforesaid, failed and refused to pay over to his successor in office the said sum of $15,000 hereinbefore mentioned."

Prior to May 27, 1922, School District No. 53 of Klamath County was a school district of the third class. The new district, under the act, is known as the County School District and comprises all of Klamath County, except the city of Klamath Falls.

It will be noticed by the provisions of Section 5, Chapter 265, Laws of 1921, that a county school district succeeds to and is entitled to all property, real and personal belonging to all second and third class districts, and joint districts theretofore existing within the corporate limits of each school district created by virtue of the act. All outstanding indebtedness of such former districts becomes the obligation of the newly created district by virtue of the act.

Under Section 5063, Or. L., as it then read, the county treasurer is required to register each bond issued and sold by the school in a book kept for that purpose in his office, noting the school district, amount, date, time and place of payment, rate of interest and such other facts as may be deemed proper and cause said bonds to be delivered promptly to the purchaser thereof, upon payment therefor; and he shall hold the proceeds of the sale of said bonds subject to the order of the district board, to be used solely for the purpose for which said bonds were issued. The amendment of this section by Chapter

91, General Laws of Oregon 1923, need not be considered here.

By virtue of Section 5067, Or. L., prior to the Act of 1923, see General Laws of Oregon 1923, page 274, whenever there are sufficient funds for the payment of any bond, principal and interest, then due, or subject under the pleasure or option of the school district to be paid or redeemed, it is the duty of the county treasurer of the county in which such school district is located to notify the holder of such bond, publish notice and redeem and pay the bond on presentation.

Section 5142, Or. L., prior to the amendments of 1923 and 1925, provided "the county treasurers of the several counties shall be the custodians of all school district funds." This section was the law of 1919, Chapter 406, Section 1.

It is stated in the brief that three counties in the state, Crook, Lincoln and Klamath, have adopted the County Unit Law, and this law is in effect in ten or eleven states. The practical effect of the act in question upon being adopted in a county is to consolidate the school districts, making one large district outside of the large cities.

■ It is contended by defendant, as the act provides for the appointment of a school superintendent in such districts created under the act, that it impairs the uniformity of the school system. It would seem, as a matter of fact, that this law tends to promote uniformity of schools. It brings all of the schools to a certain standard; in a uniform standard. Our Constitution requires only a uniform general system of common schools. It does not require a uniform school government or school administration. In other words, it is the system, and not the means of

obtaining such system that comes within the provision of the mandate of the Constitution.

The appointment of the school superintendent, instead of electing such official, might vary the process by which a portion of the school system is carried on, without changing or affecting the "uniform and general system of common schools."

A county school superintendent under the provisions of Section 7, Article VI of the Constitution may be either elected or appointed in the manner provided by law: *Stevens* v. *Carter,* 27 Or. 553, 560 (40 Pac. 1074, 31 L. R. A. 342, note). Therefore, the legislature undoubtedly had the power to provide by statute for the appointment of a school superintendent of a county school district which is only a part of a county.

Schools in the counties that have adopted the unit system, under the provision of the act, like Klamath County, are like the schools in other counties. They have the same grades, the same books, the same arrangement and there is no break in the rule of uniformity.

The mandate of the Constitution for the establishment of a uniform and general system of common schools necessarily implies, or embraces, the plenary power to establish the unit of that system, such as a school district. This power emanates from the legislature under the Constitution and in carrying on and furthering the system of schools, it is appropriate for the legislature to make the provisions contained in the act subject to their adoption by the counties.

The provisions of Article VIII, Section 3 of our Constitution were thoroughly considered and discussed by Mr. Justice WOLVERTON, in the case of *Harris* v. *Burr,* 32 Or. 348, 367 (52 Pac. 17, 39 L. R. A. 768),

pertaining to the election of school officers. From the lucid opinion in that case, it clearly appears that the strict constitutional rules governing general elections do not apply to the election of officers of school districts or units. In that case at page 367 of the report (52 Pac. 20) we find the announcement as follows:

"These considerations lead to the conclusion that the power ascribed to the legislature under the constitution to provide for the establishment of a uniform and the general system of common schools carries with it plenary power to establish the unit of that system, denominated a school district, to determine what officers shall administer its affairs, who and what manner of persons shall be eligible to office and how and by whom they should be chosen."

This declaration practically disposes of the contention of defendant that the school superintendent of Klamath County District should be elected instead of being appointed by the board of directors as provided by the act. Such superintendent of the district is not a county official. The Constitution does not provide the manner of choosing, or inhibit the legislature from directing "how and by whom they should be chosen."

In *Reynolds* v. *Board of Education of City of Topeka,* 66 Kan. 672, 679 (72 Pac. 274, 277), we find the following fair interpretation: "It is perfectly plain, however, that a uniform system of schools means uniform educational facilities." See, also, *Robinson, Treasurer,* v. *Schenck,* 102 Ind. 307 (1 N. E. 698, 701); *State ex rel. Smith* v. *City of St. Paul,* 128 Minn. 82 (150 N. W. 390).

Defendant relies upon the case of *Coulter* v. *Pool,* 187 Cal. 181 (201 Pac. 120, at page 125 of the report),

which relates to county government or the election of a county official under the California Constitution. The principles there announced are not applicable in the present case. When a public officer by official misconduct or neglect of duty forfeits his official undertaking, or renders his surety thereon liable upon such undertaking any person injured by such misconduct or neglect, or who is by law entitled to the benefit of the security, may maintain an action thereon in his own name, "against the officer and his sureties" to recover the amount to which he may by reason thereof be entitled. Or. L. § 349.

There is no implication in this section as contended for by defendant, that when such an official who is delinquent and has left the state or absconded, an action cannot be maintained, in a proper case, against the surety upon the offending official's undertaking. This was one of the risks that the defendant assumed when it executed the bond as Van Riper's surety.

In *School District No. 48* v. *School District No. 115,* 60 Or. 38, at pages 40 and 41 (118 Pac. 169, 170), Mr. Justice MOORE, in speaking of school districts said:

"These divisions are vested with certain powers, which they can employ in the particular manner prescribed. As agencies of the state, they have no vested right to the property which they may acquire, but hold it in trust for the general public, and such *quasi* corporations may be changed at the will of the power creating them. * * A school district sustains no higher relations to the state than a county occupies, and the rule is settled that the legislative department may divide counties at pleasure, apportioning the assets and burdens in such manner as may be deemed just and reasonable."

See, also, *School District No. 35* v. *Holden,* 78 Or. 267 (151 Pac. 702).

■ It has, therefore, been plainly adjudicated in this state, that the legislature has ample power to make provisions for consolidating and changing school districts, and provide that the property belonging to school district No. 53 upon the adoption of the provision of Chapter 265, and the creation of a county unit district should belong to the new district, and that the indebtedness of the old district No. 53 should become the obligation of Klamath County School District when created by virtue of the act. This provision gives the plaintiff authority to bring this action and maintain any right which School District No. 53 had prior to May 27, 1922.

■ Under the statute to which we have referred, it was the duty of Van Riper the county treasurer, when the bonds of School District No. 53 were duly registered, to retain the same until he received payment therefor; and to hold the proceeds of the sale of such bonds subject to the order of the district board solely for the purpose for which the bonds were issued. Under the statute the county treasurer had no right to permit the funds to go into the possession of the board of directors of the district, the clerk, or any other person. By releasing the bonds without receiving and retaining the payment therefor, he violated his duty as county treasurer and he and the surety upon his official bond are liable therefor.

■ The bond of G. K. Van Riper, as treasurer of Klamath County to the State of Oregon upon which the defendant American Surety Company of New York is surety, contains the following condition:

"Now, therefore, if the said principal, G. K. Van Riper shall well, truly and faithfully execute and per-

form the duties of his office according to law and shall well, truly and faithfully execute and perform the duties of such office of County Treasurer according to any law that may be enacted subsequent to the execution of this bond, and shall turn over to his successor in office, safe and undefaced, all books, papers, documents, and other property pertaining to said office and shall account for and pay over all moneys which may come into his hands by virtue of such office, then this obligation to be void; otherwise to remain in full force and effect.''

The bond is a joint and several undertaking. Plaintiff could proceed against either the principal or the surety, or both: 29 Cyc. 1464; *State* v. *American Surety Co. of New York,* 26 Idaho, 652 (145 Pac. 1097, 1106, Ann. Cas. 1916E, 209); *Pacific Bridge Co.* v. *U. S. Fidelity Co.,* 33 Wash. 47 (73 Pac. 772, 774); Or. L., § 61. Defendant is fully protected from any further action for such funds by School District No. 53.

■ The defendant contends that plaintiff cannot maintain the action for the reason that an action was commenced by plaintiff against Van Riper and the defendant surety company, and service of summons and complaint was made upon Van Riper and afterward the action was dismissed for the reason that the same had been commenced on the bond running to the state without obtaining permission of the court, as provided by Section 350, Or. L. Before the present action was commenced Van Riper had left the state. This is not a valid objection to maintaining the present action. The fact that Van Riper, county treasurer, had left the state and was liable upon his official undertaking would not release his surety. The bond is given to protect the public in just such cases.

Finding no error in the record the judgment of the trial court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, BROWN and BELT, JJ., concur.