Argued October 27, 1954, affirmed January 19, 1955

# SCHOOL DISTRICT NO. 17 OF SHERMAN COUNTY *v.* POWELL

### 279 P. 2d 492

*Howard A. Rankin,* of Portland, argued the cause for respondent. With him on the briefs were T. Lester Johnson, district attorney for Sherman County, of Moro, and Winfree, McCulloch, Shuler & Sayre, of Portland.

*William E. Dougherty,* of Portland, argued the cause for appellant. With him on the brief were Robert F. Maguire and Raymond M. Kell, of Portland.

Before WARNER*, Acting Chief Justice, and LUSK, BRAND and PERRY, Justices.

LUSK, J.

The District School Board of School District No. 17, Sherman County, Oregon, a third-class school district, filed a petition in the Circuit Court, pursuant to the provisions of ORS 33.710 and 33.720 to obtain judicial approval of the proceedings authorizing a bond issue of $360,000.00 for a new high school.

Charles L. Powell, (hereinafter referred to as the contestant) a voter, freeholder and taxpayer of the district, appeared in opposition to the petition. After a hearing the court entered a decree sustaining the legality and regularity of the acts and proceedings of the district and its board ''in the calling and holding of the bond election''. The contestant, Powell, appeals.

The case requires an examination of the following provisions of ORS:

332.080. ''If authorized by a majority vote of the legal voters present at any legally called school

---

* Chief Justice when this opinion was rendered.

meeting, the district school board shall purchase, lease, repair or build schoolhouses, houses for teachers and other employes and other necessary buildings, buy or lease land for school purposes, furnish schoolhouses and all other buildings hereinbefore mentioned with furniture, lights and apparatus; and for such purposes may, when so authorized, levy not oftener than once a year, a tax not exceeding five per cent of the assessed value of the property of the district, or issue or sell negotiable bonds as provided by law. * * *''

328.205. ''School districts may contract a bonded indebtedness for the purpose of providing funds with which to acquire, to construct, to reconstruct, to improve, to repair, to equip, to furnish a school building or school buildings or additions thereto and to acquire all property, real and personal, appurtenant thereto or connected therewith, including school busses, or to fund or refund outstanding indebtedness, or for any one or combination of two or more of such purposes, and to provide for the payment of the debt.''

328.210. ''(1) To provide funds for the purposes enumerated in ORS 328.205, any district school board may, whenever a majority thereof so decide, or shall, upon the petition of 10 legal voters thereof, in substantially the form contained in subsection (2) of this section, direct the district clerk to give notice of election in substantially the form contained in subsection (3) of this section.''

In the form of election notice provided by this section it is stated that ''at the school district bond election hereby called'' the polls shall be open from 2 p.m. to 8 p.m. of the appointed day and that the vote shall be by ballot upon ''the question of contracting a bonded indebtedness in the sum of $ ———— for the purpose of ———— in and for said school district.'' The form of the ballot is prescribed.

328.215. Provides for publication or posting of the notice of election.

328.220. "Immediately prior to opening the polls, the legal voters present shall convene, * * * and elect three judges and a clerk, who shall conduct the election and, when the polls are closed, canvass the vote and certify the result to the district school board, the county treasurer and the county superintendent. * * *"

The record shows that under date of February 25, 1953, the district school board unanimously adopted a resolution calling an election to be held on March 24, 1953, at which there would be submitted to the legal voters of the school district the question of contracting a bonded indebtedness in the sum of $360,000.00 for the purpose of constructing and equipping a school building and acquiring property appurtenant thereto, and directing the clerk to give the requisite notice of such election, and that notice was given in compliance with the requirements of the statute; that a meeting was held immediately prior to the conducting of the bond election at which judges and a clerk were selected to conduct the election, and that the proposed bond issue carried by a vote of 163 to 67. It does not appear that prior to the election a "school meeting" was had in accordance with the provisions of ORS 332.080 at which the legal voters authorized the district school board to construct and equip a school building and purchase a site for it.

The contestant asserts that this omission constitutes a fatal defect in the proceedings because, as it is argued, §§ 332.080 and 328.210 are to be construed in pari materia and the grant of authority at a "school meeting" under the former section is a condition precedent to the exercise by the board of the power to call a bond election under the latter. In support of this position

the contestant calls attention to cases holding that a "school meeting" is a deliberative assembly of the voters of the district called for the purpose of conference and consultation (see *Behrens v. Bechtel,* 131 Wash 508, 230 P 426; *Petrie v. Common School District,* 44 Ida 92, 255 P 318; 3 Cooley on Taxation (4th ed) §§ 1019, 1020), and dwells in argument upon the purpose which such a meeting may serve of forestalling the submission by the board to the voters of the district of ill-considered and imprudent proposals. A mere election, it is said, is not a "school meeting".

■ We may agree that a "school meeting" has the meaning claimed for it without yielding to the suggested construction of the statute. In our opinion the authority to call a bond election vested in the board is not necessarily supplementary to favorable action at a school meeting on the question of building and equipping a school building. An election may follow such action where the issuance of bonds is necessary in order to finance the construction of a building so authorized. *Baxter v. Davis,* 58 Or 109, 112, 112 P 410, 113 P 438. But, where there has been no such previous action, a vote at a bond election in favor of a bonded indebtedness for the purpose of constructing a school building is at once authority to construct the building and issue bonds. The opinion in *Baxter v. Davis,* a case cited by both parties, so states.

There have been significant changes in the relevant legislation since *Baxter v. Davis* was decided in 1911. There was at that time a provision (B & C Comp § 3389, Subdiv. 5) not materially different from ORS 332.080. But there was no general grant of power to contract a bonded indebtedness for the purpose of providing funds with which to construct a school building, etc., such as that contained in ORS 328.205. This provision

was adopted in 1913. General Laws of Oregon 1913, ch 172 § 2. By the same section a change was made in the provision prescribing the form of the bond election notice. Previously it read: "Notice is hereby given that at a *school meeting* of school district No. ——" etc. (Italics added.) B & C Comp 3389, Subdiv. 31. The 1913 amendment, now ORS 328.210, reads: "Notice hereby is given that at the school bond *election* hereby called", etc. (Italics added.) In the present statute there is no reference to a meeting in connection with the bond election save the meeting prior to the election for the purpose of selecting election officials, as provided for by ORS 328.220.

These new provisions, considered together, can only properly be interpreted as authorizing the board, whenever a majority shall so decide, or upon the petition of ten legal voters of the district, to call an election at which "by one and the same vote", as it is phrased in *Baxter v. Davis,* and without the necessity of a school meeting, either prior to such election or concurrently with it, authority may be conferred to construct and equip a school building or perform any of the other acts enumerated in ORS 328.205, and also to provide for the financing of such projects by the issuance of bonds.

As heretofore indicated, the argument on behalf of the contestant proceeds upon the view that the authority to call a bond election depends upon the previous conferring of authority by a school meeting as provided in ORS 332.080. We are not persuaded that this is a natural reading of the section. If it were it would introduce a curious anomaly into the statute, for one of the purposes for which school districts are authorized by ORS 328.205 to contract a bonded indebtedness is to acquire school busses, a subject not mentioned in ORS 332.080. Consequently the "school

meeting'' provision can in no view of the matter apply to the acquisition of school busses. It seems to us that it would be highly unreasonable to say that the statute means that, while an election, without more, is sufficient for the purpose of contracting an indebtedness in order to provide funds with which to acquire school busses, the authority to issue bonds for any of the other purposes enumerated in the very same section can only be exercised after prior authorization at a school meeting.

This conclusion does not conflict with *Baxter v. Davis.* The question for decision in that case was whether, after issuance of bonds for financing the construction of a building and purchasing a site had been authorized at a school meeting which was also an election, the school board itself was empowered to select a site for the building. The court held that the power to select the site was vested solely in the legal voters of the district to be exercised by them at a school meeting. The discussion found in the opinion of the power to issue bonds was more or less obiter. In the course of that discussion the court said, referring to the power to confer an authority for the purchase of land or the erection of a building, on the one hand, and the power to levy a tax or issue or sell bonds, on the other, that ''We can see no reason why the authority to do both, when circumstances demand that both must be exercised, may not be conferred by one and the same vote.'' Express approval was given to the decision to that effect in *People v. Carruthers School District,* 102 Cal 184, 36 P 396, the court saying that the statutes of California ''are of the same general import as our own''. *Baxter v. Davis,* therefore, is not authority, even under the then existing legislation, for the contestant's claim that a school meeting must first confer authority to erect a building or purchase land before

a bond election can be validly held. And, even though some language in the opinion in that case might be said to support the claim that where both powers are exercised by one and the same vote it must be done at a school meeting, such language is no longer apposite in view of the statutory changes to which we have called attention.

■ We hold, therefore, that an issue of school bonds for any of the purposes enumerated in ORS 328.205 may be validly authorized at an election called for that purpose without the necessity of any other authorization whatever at a school meeting. It may be added that up to this time school district authorities, members of the profession, and this court appear to have proceeded upon the assumption that this is the correct interpretation of the legislation on the subject. See *McBee v. School District,* 163 Or 121, 128, 96 P2d 207; *Pullen v. School District,* 95 Or 289, 294, 186 P 9, 187 P 624; *State ex rel. v. School District,* 179 Or 441, 452, 172 P2d 655.

We come to the only other objection to the legality of the bonds which calls for extended discussion. The statute under which this proceeding was instituted provides in part that it may be commenced by the board of directors ''of any district created or established as a municipal corporation, quasi-municipal or public corporation, by vote of the duly qualified electors within the district and proclamation as provided by law'' (ORS 33.710). The petitioner alleged that School District No. 17, Sherman County, was so created and established as a municipal corporation. The contestant denied this allegation and contends that the petitioner has failed to sustain the burden of proving it.

School District No. 17 came into being, if it exists at all, as the result of a proceeding in 1948 by which

former School District No. 17 and School District No. 22, both of Sherman County, were consolidated. The statute provides in effect that two or more contiguous or noncontiguous school districts may consolidate when a majority of the votes cast in each district favors consolidation. ORS 330.110, 330.140.

The record of this case shows that all statutory requirements were complied with in District No. 17. With respect to District No. 22 the proof is as follows: There is in evidence a copy of a notice of the proposed consolidation given by the county school superintendent and ex-officio secretary of the district's boundary board to the district school boards of the respective school districts under date of October 6, 1948. Such a notice is required by ORS 330.110 (2). It recites that petitions for consolidation from each of such districts containing the requisite number of signatures of legal voters had been presented to the district boundary board and it directed each of the district school boards "to publish or post, as a part of the notice of a special school meeting that a vote will be taken at such special meeting upon the question of consolidation of the districts designated in this notice." There is also in evidence a copy of the "order of consolidation" promulgated by the district boundary board in accordance with ORS 330.140 under date of November 3, 1948. This order recites in detail compliance by both districts with all statutory requirements including the giving of notice of the meeting in District No. 22 at which the vote on consolidation would be taken.

It is the position of the contestants that the election was invalid for the following reasons: (1) The vote for consolidation was at most a majority of the votes cast, whereas the Constitution, Art. XI, § 2a requires an affirmative vote of the "electors" in each district;

(2) there is no proof that any notice of the election as required by statute was given in School District No. 22.

*First: The Constitutional Question.*

At the general election on November 3, 1914, the people approved an amendment proposed by the legislature of Art. XI, § 2 of the Constitution, which is now § 2a of Art. XI and reads as follows:

> "The Legislative Assembly, or the people by the Initiative, may enact a general law providing a method whereby an incorporated city or town or municipal corporation may surrender its charter and be merged into an adjoining city or town, provided a majority of the electors of each of the incorporated cities or towns or municipal corporations affected authorize the surrender or merger, as the case may be."

The contestant asserts that this provision controls in the consolidation of school districts, and cites authorities which hold that a "majority of the electors" means a majority of those qualified to vote and not merely of those actually voting. Therefore, it is said, the statute authorizing a consolidation upon the favorable vote of a majority of the votes cast is unconstitutional, and a proceeding taken under that statute is void.

The petitioner meets this contention by the argument that the legislature is vested with statutory authority to regulate school district consolidation proceedings by Art. VIII, § 3 of the Constitution, which reads, "The legislative assembly shall provide by law for the establishment of a uniform and general system of common schools"; and relies on *Harris v. Burr,* 32 Or 348, 367, 52 P 17, 39 LRA 768, where it was decided that Art. VIII, § 3 "carries with it plenary power to establish the unit of that system, denominated a school district, to determine what officers shall administer

its affairs, who and what manner of persons shall be eligible to office and how and by whom they should be chosen.'' See, also, *Livesley v. Litchfield,* 47 Or 248, 83 P 142, and *State v. Hingley,* 32 Or 440, 442, 52 P 89.

In the view that we take of the question it is unnecessary for us to resolve either of these propositions, for we are clearly of the opinion that Art. XI, § 2a has no application to school districts.

■ In the first place, it is not at all clear that a provision concerning the *merger* of one municipality into another includes the *consolidation* of two municipalities. While the words are frequently used interchangeably (see *State ex rel. v. North Bend,* 171 Or 329, 343, 137 P2d 607; *State v. Atlantic Coast Line R. Co.,* 202 Ala 558, 81 So 60; 19 CJS 1364, Corporations § 1603), yet a true consolidation occurs where a new corporation springs into being and the prior corporations are extinguished and cease to exist, whereas a merger occurs where one corporation continues to exist and the others are merged in it without the formation of a new corporation. 19 CJS 1364, Corporation § 1604, and see cases cited in 27 Words and Phrases (Perm ed) 126-132. The statute governing the consolidation of school districts uses the word consolidation, and clearly provides for a consolidation rather than a merger within the strict meaning of those words. See ORS 330.140, 330.220, 330.240.

We prefer, however, to put the decision of this question on another ground.

Article XI, § 2a has been since 1914 a part of the Home Rule amendment (Art. XI, § 2) of the Constitution. The classic opinion of Mr. Justice HARRIS construing that amendment in *Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917) is decisive of the question here presented. Article XI, § 2 provides in part:

"Corporations may be formed under general

laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon * * *.''

The question in the Port of Portland case was whether the legal voters of a port, a municipal corporation created by an act of the legislature, could amend their own charter. The decision involved, among other things, the construction of the foregoing provisions of Art. XI, § 2, and in particular with reference to whether a port was a municipality within the meaning of the word as there employed, and to which such power had been granted. The court held that it was not such a municipality, saying:

"* * * It will be recalled that it was suggested that the word 'municipality' employed in the second sentence is used either in a comprehensive or else in a restricted sense. If it is to be given its broadest signification it will include a port; but, if it is narrowed it only means a municipality like a city or town and in that event the prohibition in the second sentence would only prevent the legislative assembly from enacting, amending or repealing any charter or act of incorporation for any city or town or municipality in the nature of a city or town. * * * If it was intended to lay a prohibition on the legislature as to cities and towns and also on another sort of 'municipality' why did not the next sentence, which grants a permission, include that other kind of a 'municipality' in the permission? If the word 'municipality' as here used includes a port it also includes a county because Article XI, Section 9, speaks of 'county, city, town or other municipal corporation.' If a port and county are not included within the prohibition of

the second sentence then the legislature can pass a special law amending a port charter or affecting a single county; but if a county and a port are within the embrace of that sentence, then the legislature cannot single out a county and pass a law which is special as to such county, and the result will be that, by an actual count, 125 statutes passed by the legislature since 1906 are indubitably void, 34 more are probably void and about 25 others are possibly void. * * * However, it is not necessary to rest this conclusion upon the doctrine of consequences for the reason that every sign found in the amendment itself, as well as all the evidence afforded by the argument made by its framers and the ballot title prepared by them, points with unerring certainty to the conclusion that cities and towns were municipalities which were uppermost in the minds of those who framed this amendment and the word 'municipality' was only used as a synonym for city or town.''

Under these principles it was held in *Carriker v. Lake County,* 89 Or 240, 171 P 407, 173 P 573, that the second and third sentences of Art. XI, § 2 do not apply to a county, and in *State v. Mehaffey,* 82 Or 683, 162 P 1068, that they do not apply to a drainage district. See, also, *Barber v. Johnson,* 86 Or 390, 394, 167 P 800, 1183.

The reference in *Wasco County P.U.D. v. Kelly,* 171 Or 691, 137 P2d 295, at p. 698, to the ''broad and comprehensive sense'' in which the word ''municipality'' is used in Art. XI, § 2 and Art. IV, § 1a (which reserves the power of the initiative and referendum to voters of municipalities and districts) is, in so far as it includes Art. XI, § 2, in apparent conflict with the construction placed upon that word in *Rose v. Port of Portland.* On the very next page of the report, however, the court recognized the correctness of that construction by saying, ''There is nothing in the constitution which grants to municipalities other than cities or towns

the right to enact their own charter or act of incorporation"; and the decision in the Wasco County P.U.D. case is in entire harmony with that construction. The comment referred to, therefore, can only be regarded as an inadvertence. In this connection see the specially concurring opinion of Mr. Justice BELT, 171 Or 721.

It is apparent that Art. XI, § 2a was submitted to the people under the mistaken belief that, in the absence of such constitutional authority, a general statute authorizing the merger of cities and towns was invalid. Language used in the opinion in *McKeon v. City of Portland,* 61 Or 385, 122 P 291 (where an attempted merger of the cities of Portland and St. Johns was held to be invalid), could be pointed to as supporting such a belief. The McKeon case was decided in 1912. In 1913 an opinion was rendered in *State ex Inf. v. Gilbert,* 66 Or 434, 134 P 1038, which cleared up the misunderstanding about the McKeon case. The court there held that there was nothing in the Constitution which infringes upon the right of the legislature to make general laws for the formation of municipal corporations and that the consolidation of two cities, accomplished pursuant to the provisions of General Laws of Oregon 1893, p. 119, was valid. As pointed out in the opinion by Mr. Justice BAILEY in *State ex rel. v. North Bend,* supra, the action of the legislature submitting the proposed amendment of Art. XI, § 2 to the voters for their approval or rejection was taken after the decision in *McKeon v. Portland* and before that in *State ex Inf. v. Gilbert.* In the McKeon case the court said:

"* * * Whatever may have been the power of the city of Portland under the terms of its charter granted by the Legislative Assembly to absorb other municipalities, yet it must yield to the later restric-

tions of the Constitution forbidding the Legislative Assembly to enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town." 61 Or 390.

■ The purpose of Art. XI, § 2a was to remove one of the "restrictions" by vesting in the legislature the power—assumed at the time to be nonexistent—to enact general laws which would enable the municipalities mentioned in Art. XI, § 2 to merge subject to the conditions stated in the section. It applies to cities and towns and to no other municipalities. Every reason given for so holding with respect to Art. XI, § 2 in the part of the opinion in *Rose v. Port of Portland* which we have quoted, except those based on the ballot title and the argument in the Voters Pamphlet (there having been no argument in that document accompanying the publication of Art. XI, § 2a), applies with equal force to the present question. The language in both sections used to describe the bodies corporate to which they were intended to apply is to all intents and purposes identical. While § 2 speaks of "municipalities" and § 2a of "municipal corporations", these terms are interchangeable. As stated in 1 McQuillin, Municipal Corporations (3d ed) 453, § 2.07:

"* * * The term 'municipal corporation,' in its strict and primary sense, except in so far as the term is extended by statute or by the constitution of the state, * * * applies, subject to a few exceptions in some states, only to incorporated cities, towns and villages having subordinate and local powers of legislation, and a statute so provides in some states. So generally the words 'municipal corporations,' as used in the constitution of a state, apply only to incorporated cities, towns or villages invested with the power of local legislation."

See, also, 37 Am Jur 620, Municipal Corporations § 23.

■■ The amendment in question even adopts the transition from the phrase "municipality, city or town" to "city or town", so much stressed in *Rose v. Port of Portland;* for it empowers the legislature to enact a general law providing a method whereby an incorporated city or town or municipal corporation may surrender its charter and be merged into "an adjoining city or town". The phrase "municipal corporation" is not here repeated. Here is strong evidence of the complete identification of the municipalities which are the subject of § 2a with those that are the subject of § 2, and of the purpose to grant the power to merge with respect to cities and towns and no other municipal corporations. We think that a court would be warranted in applying the rule that in the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and, where its meaning in one instance is clear, this meaning will be attached to it elsewhere. *Holman Transfer Co. v. Portland,* 196 Or 551, 563, 249 P2d 175, 250 P2d 929, and cases there cited. Apart from that rule, the purpose of the provision is so clear as to admit of no doubt as to its meaning. Both § 2 and the 1914 amendment thereof deal with the respective powers of the legislature and of the legal voters of certain municipalities or municipal corporations, and it would be unreasonable to interpret § 2a as including any municipalities other than those which are the subject of § 2, in the absence of clear language in the amendment expressing such an intention. There is no such language.

■■ A school district has been referred to as a corporation having the most limited powers known to the law. It is a quasi-municipal corporation separate and

distinct from pure municipal corporations such as cities and towns. *Lovell v. School District No. 13,* 172 Or 500, 507, 143 P2d 236. See, also, 1 McQuillin, Municipal Corporations (3d ed) §§ 2.07, 2.13, 2.29. A school district is not a municipal corporation within the meaning of Art. XI, § 2a of the Constitution, and the consolidation of school districts is governed, therefore, not by the constitutional provision, but by the statute heretofore cited.

■ It is settled law that the legislature may, in the absence of constitutional restrictions, authorize and regulate the procedure governing the consolidation of school districts. *Klamath County School District v. American Surety Co.,* 129 Or 248, 259-260, 275 P 917. See, also, 78 CJS 666, Schools and School Districts § 27. This is a power which the legislature has exercised since 1903 (General Laws of Oregon 1903, p. 86), and has never, so far as we know, been challenged up to this time. Here the challenge is solely on the basis of a constitutional provision which, as we have seen, has no application to school districts.

*2. The Alleged Failure of Proof of Posting Notices.*

■ There is no affirmative evidence that notice of the consolidation election in School District No. 22 was not posted. The contestant relies simply on what is claimed to be the petitioner's failure to sustain the burden of proving the posting of the notices. In our opinion the petitioner made a prima facie case on this issue, and, as there is no evidence to the contrary, the contention cannot be sustained. Under the provisions of ORS 331.010 the clerk of the school district is charged with the duty of posting or publishing notice of an election. There is no requirement of law that the clerk shall make a return showing performance of this duty.

 Substantial compliance with a statutory requirement of posting or publishing notice of an election is a condition precedent to the validity of the measures voted on. *Witham v. McNutt,* 186 Or 668, 208 P2d 459, where an exhaustive review of the prior Oregon decisions may be found. The question here is whether there is evidence of any compliance whatever in School District No. 22.

The answer is to be found in our own decisions. *State ex rel. v. Port of Tillamook,* 62 Or 332, 124 P 637, Ann Cas 1914C 483, was a quo warranto proceeding attacking the organization of a port. One of the contentions in this court was that the defendants failed to sustain the burden of proving that the statutory requirements as to notice of the election had been complied with. The evidence showed that a petition containing the requisite number of signatures was presented to the county court, that the county court made an order providing for the holding of a special election and directing the county clerk to give notice of such election to be held on the 24th day of August, 1909; that at a special session of the court on the 31st of August, 1909, 248 votes having been cast in favor of incorporating the port and 172 votes against the same, the court made and entered a proclamation declaring the Port of Tillamook to be duly incorporated as a municipal corporation pursuant to the Act of 1909; that thereafter the governor appointed a board of five commissioners; that two commissioners on the expiration of their terms were re-elected and qualified and their certificates of election and appointment were produced in evidence. The court noted that the statute does not require a return of the posting of the election notices, and invoked the presumption that official duty

has been regularly performed. ORS 41.360 (15). The court said:

> "The defendants show a compliance with the statute up to the time that it was the duty of the clerk to issue and mail notice to the judges and clerks of the election in the different precincts. Then the law steps in with the presumption that this official duty has been regularly performed, which in itself stands as prima facie evidence that the notices were issued and posted. Lane County v. Neilon, 44 Or. 14, 21 (74 Pac. 212). Presumptions of this character are made a part of the substantive law of this State by statutory enactment. In State ex inf. Brown v. Sengstacken, 61 Or 455 at page 468 (122 Pac. 297), it is said: 'In elections to incorporate ports, neither the judges nor the clerks are required to make any return of the posting of election notices. Bennett Trust Co. v. Sengstacken, 58 Or. 333 (113 Pac. 863). This duty never having been imposed by statute, it will be assumed, without deciding the question, that the 14 notices, in respect to which no evidence was offered, were properly presumed by the trial court to have been regularly posted'— citing Wheat v. Smith, 40 Ark. 266, 276 (7 S. W. 161). It is laid down as a rule, in 15 Cyc. 326, that, where an election has been held and the will of the voters has been executed by the proper authority, it may be presumed that due notice of the election was given." (62 Or 339.)

The doctrine of this case was followed and applied in *State ex rel Brown v. Bailey*, 151 Or 496, 500, 51 P2d 671, which was likewise a quo warranto proceeding involving the organization of a port.

The statute regulating the consolidation of school districts provides that within ten days after receiving the petition for a consolidation election "the district boundary board shall notify the district school board of each district designated by the petition, fix the date of and be responsible for the giving of notices for a school

meeting in each district to vote upon the question of consolidation of the districts specifically designated in the notice." ORS 330.110, Subdiv. 2. The district boundary board performed this duty by instructing the county school superintendent "to order the respective school boards to meet and order notices for a vote on the question of consolidation of School District No. 17 and 22 posted". Under the decisions to which we have called attention it will be presumed that this duty was performed and that the notices were duly posted.

There is another reason why the contestant's position cannot be sustained. It rests upon the rule "that where an act is done which can be done legally only after the performance of some prior act, proof of the later carries with it a presumption of the due performance of the prior act." *Knox County v. Ninth Nat. Bank of New York,* 147 US 91, 13 S Ct 267, 37 L ed 93, 96. On the authority of the cited case this presumption was applied in *State ex rel. v. Tillamook,* supra, and again in *State v. Deschutes County,* 88 Or 661, 173 P 158. The latter case was a quo warranto action challenging the organization of Deschutes County. The court, speaking through Mr. Justice BURNETT, after holding that judicial notice should be taken that the secretary of state canvassed the votes and the governor proclaimed creation of Deschutes County, said:

> "They could not have done this legally except upon a prior regular election and count of the votes cast, resulting in the proper majority for the proposed county."

So, in the case at bar, the district boundary board having, in obedience to statute, canvassed the vote and found that a majority of all votes cast in each district favored consolidation and made its order of consolidation, it will be presumed, in the absence of evidence to

the contrary, that all the prior proceedings were regular, including compliance with the requirement of posting notices of the election. See, also, *State ex rel. v. Port of Bay City,* 64 Or 139, 143, 129 P 496.

The dictum in *Spence v. Watson,* 182 Or 233, 241, 186 P2d 785, to the effect that an order of the county court following an election held for the purpose of the annexation by a town of contiguous territory was not conclusive, is not in conflict with our holding. That case was decided on a demurrer to a complaint which alleged the invalidity of the annexation proceedings, in the respect, among others, that 15% of the resident owners of property on the proposed annexation did not first sign and file with the authorities of the town a petition that such territory be included in the town. The demurrer, of course, admitted the truth of this and all other allegations of the complaint, so that the case was one in which it was conceded that a condition precedent for the holding of an election had not been complied with. It was in those circumstances that the language of the court referred to was used. The case is different, however, when, as here, there is no evidence of failure to comply with any of the requirements of the statute.

The remaining objections argued may be readily disposed of.

It is asserted that the district school board failed to exercise its statutory discretion with respect to the projected new school building and the bond issue. The contention is sought to be supported by the testimony of the school directors themselves, which, it is said, discloses that the cost of the building is too high and that the directors were ignorant of their own part in the buisness. It is a case, we are told, not of mistaken judgment, but of a failure to use any judgment.

We pass the question whether this is the sort of objection that may be raised in this proceeding. Assuming that it may be, we are of the opinion that the objection here is wanting in substance.

It is properly conceded by the contestant that a school board has a wide discretion in the exercise of the authority committed to it. Courts can interfere only when the board refuses to exercise its authority or pursues some unauthorized course. *McBee v. School District No. 48,* supra, 163 Or at p. 138. The wisdom or expediency of an act, or the motive with which it was done, is not open to judicial inquiry or consideration where power to do it existed. 78 CJS 920-921, Schools and School Districts § 128. Acts in abuse of discretion may be restrained, but the presumption is that there was no abuse, ibid, *School District No. 68 v. Hoskins,* 194 Or 301, 318, 240 P2d 949; and the burden of proving abuse of discretion is on the one asserting it, and it must be established by clear and convincing evidence. 78 CJS 922, 923, Schools and School Districts § 128. It is always to be borne in mind when questions of this kind arise that it is the school board, not the courts, to which the administration of the affairs of a school district is entrusted, and that the right to obtain relief from the courts against the action of the board depends upon a clear showing that such action is illegal or arbitrary. A court is not a Super School Board. "With the exercise of discretionary powers courts rarely, and only for grave reasons, interfere. * * * Difference in opinion or judgment is never a sufficient ground for interference." *Dailey v. New Haven,* 60 Conn 314, 319, 22 A 945, 14 LRS 69. See 2 McQuillin, Municipal corporations (3d ed) § 10.33.

Much of the criticism in contestant's brief of the action of the board—and, it may be added, of the action

of the people in the district themselves since they voted by a large majority in favor of the bond issue—is founded on a difference of opinion between the contestant and the board as to whether the new high school building is really needed and will be worth what it is proposed to pay for it. With these matters the court cannot concern itself. The other basis of attack is the alleged ignorance of the school directors concerning the new building and the affairs of the district. The directors were called first as witnesses by the petitioner; they were recalled by the contestant in support of the claim of abuse of discretion. One or two of them, it may be conceded, did not make very effective witnesses, and one displayed a lamentable lapse of memory as to some of the matters about which he was questioned. Whether this was due to the fact that he was in the unaccustomed role of a witness in court or to some other cause there is no way of telling. In any event the testimony does not convince us, as it did not convince the trial judge, that when the school board met more than eight months before the trial and adopted the resolution calling the bond election they did not exercise an informed judgment respecting the business in hand.

Finally, it is objected that the court erred ''in entering a decree validating a part of the bond proceedings.'' Counsel say that the petition and decree relate only to the bond election, and that the decree should have settled many other questions, though what these are is not specifically stated. It is enough to quote the statute. ORS 33.710, Subdiv. 2, provides:

> ''All proceedings of the district may be judicially examined and determined in one special proceeding, or any part thereof may be separately examined and determined by the court.''

The decree is affirmed.